1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   PEGGY S. RUFFRA
    Supervising Deputy Attorney General
5   GREGORY A. OTT
    Deputy Attorney General
6   Cal. State Bar No. 160803
       455 Golden Gate Avenue, Suite 11000
7      San Francisco, CA 94102-7004
       Telephone: (415) 703-5964
8   Fax: (415) 703-1234
       E-mail:  gregory.ott@doj.ca.gov
9
    Attorneys for Respondent
10
                    IN THE UNITED STATES DISTRICT COURT
11
                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
12

13

14  **ADAM TORREZ,**                          C 08-1309 TEH

15                            Petitioner,     **ANSWER TO ORDER TO SHOW
                                              CAUSE**
16          v.

17  **MICHAEL MARTEL, Warden,**

18                            Respondent.

19

20          Respondent provides this Answer to the Order to Show Cause why the petition for writ

21  of habeas corpus should be denied:

22                                     **I.**

23                                   **Custody**

24          California state prisoner Adam Torrez ("petitioner") is lawfully in the custody of the

25  California Department of Corrections and Rehabilitation pursuant to a valid judgment in *People v.*

26  *Torrez*, Santa Clara County Superior Court Nos. 203442 & 198869.  On June 4, 1999, following a

27  bench trial, petitioner was convicted of twenty counts of committing a lewd act on a child under the

28  age of fourteen, and two counts of committing continuous sexual abuse on a minor.  *See* Cal. Penal

Code §§ 288(a), 288.5(a), 1203.066(a)(8), 667.61(b).  On March 3, 2000, the trial court sentenced petitioner to an indeterminate life sentence plus sixty-six years in prison.

Petitioner unsuccessfully pursued direct review.  Following that, he filed a petition for writ of habeas corpus in Santa Clara County Superior Court.  After an evidentiary hearing, that court granted the petition in part.  Upon the prosecutor's appeal, however, the California Court of Appeal reversed and remanded to the trial court with directions to enter an order denying the petition.  The California Supreme Court denied review of the court of appeal's decision.

Petitioner thereafter filed the instant petition.

## II.

## Verification

The petition is signed and verified by petitioner.

## III.

## Exhaustion Of State Remedies

Petitioner exhausted state remedies for his claims two through (a portion of) four, Petition at 4-7.  He did not exhaust state remedies for his claims one, five, and six, and that part of claim four challenging the counts related to Carlos, Petition at 3, 8-9.  Relief is barred on the unexhausted claims, but they may nevertheless be denied on the merits.  *See* 28 U.S.C. § 2254(b)(2).

## IV.

## Timeliness

Petitioner filed his petition within the one-year statute of limitations period set by 28 U.S.C. § 2244(d)(1).

## V.

## General Denial

Petitioner was not denied rights under the Constitution or laws of the United States and is not entitled to discharge from his present confinement.  The state court adjudication of petitioner's claims was not contrary to, nor involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## VI.

### Specific Denial

Trial counsel neither erred nor prejudiced petitioner by failing to "raise" the statute of limitations at trial. The prosecution bore an affirmative burden to prove the limitations statute had been met, and the sufficiency of that proof is not challenged here. There was, in any event, abundant corroborating evidence for purposes of the tolling statute.

Petitioner suffered no prejudicial violation of his right to confrontation or presence. He had no right to presence, as he could not have added anything to the telephone proceedings. He was not, for the same reasons, prejudiced in any way by his absence.

Petitioner's sentence on count 36, pursuant to California Penal Code section 667.61, does not violate petitioner's right against ex post facto application of the law. The offense for which petitioner was sentenced under that provision occurred after the enactment of the provision.

Petitioner was not denied the effective assistance of trial counsel in counsel's failure to present medical testimony. On the record, it is presumed counsel's decision not to call an expert was tactical. It was reasonable to challenge the prosecution's case by cross-examination rather than by competing experts. Petitioner was not, in any event, prejudiced.

Petitioner was not denied the effective assistance of trial counsel in counsel's failure to cross-examine Carlos about a prior inconsistent statement. Any impeachment value in the statement would have been nullified by Carlos's several prior *con*sistent statements.

Petitioner was not denied the effective assistance of trial counsel by counsel's failure to directly confront Carlos with Carlos's post-offense molestation of other children, his incident of sexual contact with Jane, or the fact he resided in a home for juvenile sex offenders. The evidence was all presented to the court by other means, and there existed tactical reasons for not rehashing the evidence on cross-examination of Carlos.

## VII.

### Statutory Presumption

The California Supreme Court, Court of Appeal, and Superior Court made express and implied findings of fact. Such findings are presumed correct. 28 U.S.C. § 2254(e)(1). The

California courts' mixed findings of law and fact are entitled to deference under 28 U.S.C. § 2254(d).

**VIII.**

**Incorporation By Reference**

Respondent incorporates by reference as though fully set forth the factual statements material to the issues herein which are contained in the accompanying memorandum of points and authorities.

**IX.**

**Rule 5 Statement**

EXHIBIT A    Clerk's Transcript (2 vols.) of trial, *People v. Torrez*, Santa Clara County Superior Court Nos. 198869 & 203442.

EXHIBIT B    Augmentation to Clerk's Transcript (1 vol.) of trial, *People v. Torrez*, Santa Clara County Superior Court Nos. 198869 & 203442.

EXHIBIT C    Reporter's Transcript (7 vols.) of trial, *People v. Torrez*, Santa Clara County Superior Court Nos. 198869 & 203442.

EXHIBIT D    Reporter's Transcript (1 vol.) of Jan. 14, 2000 (new trial motion hearing), *People v. Torrez*, Santa Clara County Superior Court Nos. 198869 & 203442.

EXHIBIT E    Reporter's Transcript (1 vol.) of Feb. 18, 2000 (sentencing), *People v. Torrez*, Santa Clara County Superior Court Nos. 198869 & 203442.

EXHIBIT F    Reporter's Transcript (1 vol.) of March 3, 2000 (sentencing), *People v. Torrez*, Santa Clara County Superior Court Nos. 198869 & 203442.

EXHIBIT G    Appellant's Opening Brief, Respondent's Brief, and Appellant's Reply Brief, *People v. Torrez*, California Court of Appeal No. H021287.

EXHIBIT H    Opinion, *People v. Torrez*, California Court of Appeal No. H021287.

EXHIBIT I    Petition For Review and Order denying petition, *People v. Torrez*, California Supreme Court No. S118736.

EXHIBIT J    Clerk's Transcript (1 vol.), *In re Torrez* on Habeas Corpus, Santa Clara County Superior Court Nos. 198869 & 203442.

EXHIBIT K    Confidential/Sealed Clerk's Transcript (1 vol.), *In re Torrez* on Habeas Corpus, Santa Clara County Superior Court Nos. 198869 & 203442.

EXHIBIT L    Reporter's Transcript (5 vols.) (evidentiary hearing on habeas), *In re Torrez* on Habeas Corpus, Santa Clara County Superior Court Nos. 198869 & 203442.

EXHIBIT M    Appellant's Opening Brief, Respondent's Brief, and Appellant's Reply Brief, *In re Torrez* on Habeas Corpus, California Court of Appeal No. H030780.

1  EXHIBIT N    Opinion, *In re Torrez* on Habeas Corpus, California Court of Appeal No. H030780.

2

3  EXHIBIT O    Petition For Review and docket sheet reflecting denial, *In re Torrez* on Habeas Corpus, California Supreme Court No. S158269.

4  **Prayer**

5  WHEREFORE, respondent respectfully prays that the Petition for Writ of Habeas Corpus

6  be denied with prejudice.

7  Dated:  September 8, 2008

8  Respectfully submitted,

9  EDMUND G. BROWN JR.
   Attorney General of the State of California

10  DANE R. GILLETTE
    Chief Assistant Attorney General

11
    GERALD A. ENGLER
12  Senior Assistant Attorney General

13  PEGGY S. RUFFRA
    Supervising Deputy Attorney General

14

15  /s/ Gregory A. Ott
    GREGORY A. OTT
16  Deputy Attorney General

17  Attorneys for Respondent

18

19

20

21

22

23

24

25

26

27

28

Answer to Order to Show Cause—*Torrez v. Martel*—No. C 08-1309 TEH

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  GREGORY A. OTT, State Bar No. 160803
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5964
    Fax:  (415) 703-1234
8   Email:  gregory.ott@doj.ca.gov

9  Attorneys for Respondent

10                 IN THE UNITED STATES DISTRICT COURT

11              FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13

14  **ADAM TORREZ,**                              C 08-1309 TEH

15                                   Petitioner,

16           **v.**

17  **MICHAEL MARTEL, Warden,**

18                                   Respondent.

19

20

21  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

Page

3    INTRODUCTION                                                                1

4    STATEMENT OF THE CASE                                                       1

5    STATEMENT OF FACTS                                                          2

6    STANDARD OF REVIEW                                                          7

7    ARGUMENT                                                                    8

8    I.    PETITIONER WAS NOT DEPRIVED OF THE EFFECTIVE
           ASSISTANCE OF TRIAL COUNSEL FOR FAILURE TO
9          "RAISE" THE STATUTE OF LIMITATIONS AS A DEFENSE              8

10         A.   Exhaustion                                                       8

11         B.   The State Court Ruling                                           8

12         C.   The Merits                                                       9

13   II.   PETITIONER'S RIGHTS TO CONFRONTATION AND
           PRESENCE WERE WAIVED, AND PETITIONER WAS NOT
14         PREJUDICED IN ANY WAY BY HIS ABSENCE                        11

15         A.   The State Court Decision                                        11

16         B.   Argument                                                        13

17              1.   Background                                                 13

18              2.   Waiver                                                     13

19              3.   Error                                                      14

20              4.   Prejudice                                                  15

21   III.  PETITIONER'S RIGHT AGAINST EX POST FACTO
           PUNISHMENT WAS NOT VIOLATED                                16

22
           A.   The State Court Decision                                       16
23
           B.   Argument                                                       17
24
     IV.   PETITIONER WAS NOT DEPRIVED OF THE EFFECTIVE
25         ASSISTANCE OF TRIAL COUNSEL IN COUNSEL'S FAILURE
           TO PRESENT A MEDICAL EXPERT                                18
26
           A.   The State Court Opinion                                        19
27
           B.   Argument                                                       26
28

**TABLE OF CONTENTS  (continued)**

Page

**V.    PETITIONER WAS NOT DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN TRIAL COUNSEL'S FAILURE TO CONFRONT CARLOS WITH PRIOR INCONSISTENT STATEMENTS** ........................................ 28

    A.   Exhaustion ............................................................................. 29

    B.   State Court Ruling ................................................................ 29

    C.   Argument .............................................................................. 29

**VI.    PETITIONER WAS NOT DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN TRIAL COUNSEL'S FAILURE TO PRESENT IMPEACHMENT EVIDENCE** ............... 30

    A.   Exhaustion ............................................................................. 31

    B.   The State Court Opinion ...................................................... 31

    C.   Argument .............................................................................. 33

        1.   Stipulations Regarding Jane ....................................... 33

        2.   Carlos's Background ................................................... 34

CONCLUSION ............................................................................................. 36

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*Aponte v. Gomez*
993 F.2d 705 (9th Cir. 1993)                                                    10

5

*Babbitt v. Calderon*
6       151 F.3d 1170 (9th Cir. 1998)                                          26

7       *Bonin v. Calderon*
59 F.3d 815 (9th Cir. 1995)                                                      27

8
        *Brecht v. Abrahamson*
9       507 U.S. 619 (1993)                                                    7, 15

10      *Brown v. Uttecht*
530 F.3d 1031 (9th Cir. 2008)                                                   30

11
        *Campbell v. Rice*
12      408 F.3d 1166 (9th Cir 2005)                                            15

13      *Carey v. Musladin*
549 U.S. 70
14      127 S. Ct. 649 (2006)                                               7, 13, 14

15      *Denton v. Duckworth*
873 F.2d 144 (7th Cir. 1989)                                                    18

16
        *Dorsey v. Chapman*
17      262 F.3d 1181 (11th Cir. 2001)                                          27

18      *Duncan v. Henry*
513 U.S. 364 (1995)                                                  8, 18, 29, 31

19
        *Early v. Packer*
20      537 U.S. 3 (2002)                                                        7

21      *Ellefson v. Hopkins*
5 F.3d 1149 (8th Cir. 1993)                                                     27

22
        *Fry v. Pliler*
23      ___ U.S. ___
        127 S. Ct. 2321 (2007)                                                   7

24
        *Kentucky v. Stincer*
25      482 U.S. 730 (1987)                                                     14

26      *Lockyer v. Andrade*
538 U.S. 63 (2003)                                                              7

27
        *Mancuso v. Olivarez*
28      292 F.3d 939 (9th Cir. 2002)                                            30

**TABLE OF AUTHORITIES  (continued)**

Page

*Maryland v. Craig*
497 U.S. 836 (1990) .......... 15

*Miller v. Anderson*
255 F.3d 455 (7th Cir. 2001) .......... 27

*Monge v. California*
524 U.S. 721 (1998) .......... 18

*Nichols v. United States*
511 U.S. 738 (1994) .......... 18

*Parke v. Raley*
506 U.S. 20 (1992) .......... 18

*People v. Carpenter*
15 Cal. 4th 312 (1997) .......... 16

*People v. Hovey*
44 Cal. 3d 543 (1988) .......... 15

*People v. Linder*
139 Cal. App. 4th 75 (2006) .......... 10

*People v. Riskin*
143 Cal. App. 4th 234 (2006) .......... 9

*Phoenix v. Matesanz*
233 F.3d 77 (1st Cir. 2001) .......... 27

*Reinert v. Larkins*
379 F.3d 76 (3d Cir. 2004) .......... 27

*Richter v. Hickman*
521 F.3d 1222 (9th Cir. 2008) .......... 27

*Siripongs v. Calderon*
133 F.3d 732 (9th Cir. 1998) .......... 26

*Smith v. Angelone*
111 F.3d 1126 (4th Cir. 1997) .......... 27

*Smith v. Phillips*
455 U.S. 209 (1982) .......... 13

*Snyder v. Massachusetts*
291 U.S. 97 (1934) .......... 14

*Strickland v. Washington*
466 U.S. 668 (1984) .......... 8-10, 18, 26, 28, 30, 33, 36

**TABLE OF AUTHORITIES  (continued)**

**Page**

*Turner v. Calderon*
281 F.3d 851 (9th Cir. 2002)                                    27

*United States v. Gagnon*
470 U.S. 522 (1985)                                            14

*Williams v. Taylor*
529 U.S. 362 (2000)                                             7

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                          7, 28

*Wright v. Van Patten*
___ U.S. ___
128 S. Ct. 743 (2008)                                          7

*Yarborough v. Gentry*
540 U.S. 1 (2003)                                              9

**Constitutional Provisions**

United States Constitution
          Sixth Amendment                                     16

**Statutes**

California Evidence Code
          § 782                                               35

California Penal Code
          § 288(a)                                      1, 2, 17
          § 288(d)                                            35
          § 288.5(a)                                           2
          § 667.61                                        17, 18
          § 667.61(b)                                   2, 16, 18
          § 667.61(e)(5)                                      18
          § 803(g)                                             9
          § 803(g)(1)(B)                                    9, 10
          § 1203.066(a)(8)                                     2

United States Code, Title 28
          § 2241                                               1
          § 2254                                             1, 7
          § 2254(b)(1)                                 8, 18, 29, 31
          § 2254(b)(2)                                 8, 18, 29, 31
          § 2254(d)                                            7
          § 2254(d)(1)                              9, 13, 14, 16, 18
          § 2254(e)(1)                                         7

**TABLE OF AUTHORITIES  (continued)**

**Page**

**Other Authorities**

Cal. Stats. 1993-94, 1st Ex. Sess., c. 14 (S.B. 26)
    § 1, page 8570                                                17

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  GREGORY A. OTT, State Bar No. 160803
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5964
     Fax:  (415) 703-1234
8    Email:  gregory.ott@doj.ca.gov

9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11              FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13

14  **ADAM TORREZ,**                              C 08-1309 TEH

15                              Petitioner,        **MEMORANDUM OF POINTS
                                                   AND AUTHORITIES IN**
16        **v.**                                   **SUPPORT OF ANSWER**

17  **MICHAEL MARTEL, Warden,**

18                              Respondent.

19

20                        **INTRODUCTION**

21          California state prisoner Adam Torrez ("petitioner") has filed a petition for writ of habeas

22  corpus in this Court pursuant to 28 U.S.C. §§ 2241 & 2254.  He raises six claims challenging his

23  conviction on numerous counts of child molestation against multiple victims.  The claims lack merit.

24  The petition should be denied.

25                      **STATEMENT OF THE CASE**

26          On June 4, 1999, following a bench trial in Santa Clara County Superior Court, petitioner

27  was convicted of twenty counts of committing a lewd act on a child under the age of fourteen, Cal.

28  Penal Code § 288(a), and two counts of committing continuous sexual abuse on a minor.  CT 154,

385; RT 532-38; *see* Cal. Penal Code §§ 288(a), 288.5(a), 1203.066(a)(8), 667.61(b).[1]  On March 3, 2000, the trial court sentenced petitioner to an indeterminate life sentence plus sixty-six years in prison.  CT 203-05, 206-08, 210; Exh. F at 541-48.

On July 18, 2003, the California Court of Appeal affirmed petitioner's judgment in an unpublished opinion.  Exh. H.  The California Supreme Court denied review on October 17, 2003.  Exh. I.

On November 12, 2004, petitioner filed a petition for writ of habeas corpus in Santa Clara County Superior Court.  Exh. J at 4.  Following an evidentiary hearing in that court, the court granted the petition on, and reversed, the two counts related to victim Jane.  Exhs. J at 141, 173-74, 182-91, L.

The prosecutor appealed the superior court's grant of partial habeas relief.  Exh. J at 195.  On October 1, 2007, in an unpublished opinion, the California Court of Appeal reversed and remanded to the trial court with directions to enter an order denying the petition and reinstating the judgment of conviction.  Exh. N.  The California Supreme Court denied review of the court of appeal's decision on January 8, 2008.  Exh. O.

On March 6, 2008, petitioner filed the instant petition.

## STATEMENT OF FACTS

The California Court of Appeal set forth the facts as follows:

The prosecution's case

Dr. David Kerns, who testified as an expert in the medical evaluation of possible child sexual abuse cases, reviewed a report and magnified photographs that Mary Ritter prepared of an examination she conducted on Jane on March 18, 1997.  At the time of the examination Jane was eight years, nine months old, Dr. Kerns was the chairman of the pediatrics department at Valley Medical Center (VMC) and Ritter was the clinical coordinator of the Center for Child Protection at VMC. The examination and photographs of Jane's external genitalia revealed a markedly narrowed hymeneal rim, which is the most frequent and consistent finding seen in cases of repeated penetrating trauma. The findings were too extensive to have been caused by a single incident, and there was no evidence of fresh or acute trauma. The findings were consistent with an attempted or actual penile penetration, and also consistent with repeated penetration by a finger or

---

1. Citations to "CT" and "RT" refer, respectively, to the Clerk's Transcript and Reporter's Transcript of petitioner's trial, lodged herewith as respondent's exhibits A and C, respectively. Other transcripts will be referred to by their respective exhibit designation.

1    fingers.

2    Santa Clara police officer Filemon Zaragoza interviewed Jane on April 1, 1997.
3    During the interview, Jane described various sexual acts involving defendant.  She
     described his touching her genitalia, skin to skin, while she was being bathed.  She
     described actual fondling, oral copulation, digital penetration of her vagina, and attempted
4    penile penetration of her vagina.  Jane said that this had happened more than 25 times.
     Although a lot of the times the touchings occurred when other people were in the home,
5    they occurred in defendant's bedroom while Jane was playing with Nintendo or other
     games defendant had there.

6
     Jane testified that defendant is her father's brother, and that he lived with her
7    grandparents.  After her parents broke up, her father lived with her grandparents also.
     Jane used to visit her grandparents' home about once a week with her mother and brother
8    Carlos.  Defendant had his own bedroom on the second floor.  He had toys and a
     television in there, as well as video games.  Often Jane would be alone in defendant's
9    bedroom with him.

10   Defendant sometimes touched Jane in a way that she did not like.  She did not
     remember when it first happened, how old she was, or what grade she was in.  The first
11   time, defendant put his hand on her vagina but she could not remember if it was over or
     under her clothes.  The second time he touched her it was under her clothes.  At a later
12   time he put his tongue on her vagina.  All these touchings happened more than twenty
     times, the whole time she was in the second and third grades.
13
     Defendant also asked Jane to touch his penis.  She did it because she was scared.
14   Defendant tried to put his penis in her vagina but it hurt and she started crying.  He also
     tried to put his penis in her rectum but she said, "No, please don't do that" and ran out of
15   the room.  Nobody else was in the room with defendant and Jane when the touchings
     occurred, and he would sometimes close the bedroom door.  The touchings continued until
16   Jane told her mother.  After that, except for when her father died, they never went back
     to her grandparents' house.
17
     Jane told her mother about the touchings because she was tired of defendant hurting
18   her.  At the same time, she told her mother that Carlos had rubbed himself against her
     while they both had their clothes on.  Carlos had to leave her house and she was not
19   allowed to see him again.  She told Carlos before he left what defendant had done to her.
     It was after that, and after she had told a counselor about the touchings, that she was
20   examined by a nurse and talked to a policeman.  Jane had not told anybody about the
     touchings before then.
21
     Rachel[2] is Jane's and Carlos's mother.  Rachel and Carlos began visiting Jane's
22   grandparents' home weekly in 1987.  At the time, Carlos was about five and defendant
     was about 17.  Jane joined the visits after she was born in June 1988.  During the visits,
23   defendant and Carlos were alone in defendant's bedroom on a number of occasions,
     including overnight at Christmas.  When Rachel would check on them, the bedroom door
24   was usually halfway open, except at night when all doors would be closed.  When he got
     older, Carlos did not want to go with Rachel and Jane to the visits.  By this time, Jane was
25   about five.  Jane continued to visit her grandparents' home with Rachel while she was in
     the second and third grades, but the visits occurred then only once or twice a month.

26

27

28   2.        In order to protect their privacy, we refer to the family
               member witnesses and their friends by their first name only.

Memo. of Points and Auth. in Support of Answer - *Torrez v. Martel* - C 08-1309 TEH

Rachel did not remember ever going up to defendant's room and finding him alone with Jane, or ever finding Jane in the room with the door closed, but defendant did have opportunities to be alone with Jane for periods of time. In March 1997, Jane told Rachel that she had been molested by defendant, which caused Rachel to stop the visits.

Carlos entered Martin House, a residential facility for juvenile offenders in Citrus Heights, in May or June of 1997. While there he attended both group and private counseling. In mid-November 1997, Carlos told his counselor that he was concerned that his sister was at risk from a certain individual with a family relation of some sort. When the counselor asked Carlos why he felt that way, Carlos revealed for the first time that he had been sexually assaulted as a child. The counselor reported the conversation to the authorities within 24 hours, on November 13, 1997.

Carlos called his mother in November 1997 and told her that he had been advised by a counselor to tell her what happened to him. Before then, he had not said anything to Rachel about the sexual contact between defendant and him.

In mid-November 1997, Officer Zaragoza heard from Rachel that she had just learned that Carlos was also complaining of being the victim of sexual abuse. Zaragoza spoke with Carlos over the telephone on November 22, 1997. Carlos stated that he was about five or six when defendant began to fondle him at Jane's grandparents' home. At first defendant fondled Carlos and Carlos was made to fondle defendant. Later Carlos was forced to orally copulate defendant, and defendant sodomized Carlos. All such acts by defendant ended when Carlos was about 10 years old.

Carlos had a bowel disorder that began prior to when Rachel met Jane's father. The disorder would cause Carlos to soil his pants at least once a day. He had the disorder during the whole period of time that he was visiting Jane's grandparents home, and he just got over the problem a few years ago. Defendant and some other members of his family would make fun of Carlos and call him names because of his problem.

Carlos testified that he was about five years old when he first met defendant. He and his mother used to visit defendant's family in their home on weekends. Defendant had toys and games and Nintendo in his room, and Carlos would spend time with defendant there. Most of the time it was just the two of them, but sometimes there were other people in the room.

Defendant first fondled Carlos's penis when Carlos was six years old. The next time, defendant wanted Carlos to fondle defendant's penis. Carlos was hesitant, but defendant took his hand and placed it there. Defendant told him not to tell anybody and that, if he did, he would be the one to get in trouble. Later, defendant started to orally copulate Carlos, and he asked Carlos to do the same thing to him. When Carlos said no, defendant said that if he did not do so defendant would not let him play with his toys or video games. Defendant used his hand to move Carlos's head toward his penis. When Carlos was seven or eight, defendant began to sodomize him. Some type of touching occurred almost every time that Carlos visited defendant.

When Carlos was about nine years old, he started telling his mother that he did not want to go to defendant's house. She would then sometimes let him stay with other relatives. Even when he did go with his mother to the visits, the touchings by defendant did not happen as often. The last touching occurred when Carlos was ten. The first person Carlos ever told about the touchings was his counselor at Martin House. He did not tell anybody about them before then because he was afraid that he would get into trouble.

1    Dr. Angela Rosas, a pediatrician at the U.C. Davis Medical Center who testified as
2 an expert in the medical evaluation of possible sexual abuse, examined Carlos on
  December 8, 1997.  During the examination she found that Carlos had some very dark
3 spots on one side around his anus that were unusual.  After consultation with other
  colleagues she felt assured that these spots were pigment discoloration from scarring
4 around the anus from penetration injury. The age of the scarring was consistent with the
  time frame of the history of sexual abuse Carlos had described to her.  Any object
5 penetrating the anus that would be large enough to cause injury to the anus itself could
  cause the scarring.  Carlos's chronic bowel problem is seen in both children who have and
6 children who have not been sexually abused, and the problem would not be the cause of
  the scarring she found.

7 The defense case

8    Defendant's mother Sally testified that when Carlos first visited her home with
  Rachel he had very little contact with defendant because he was too young. Carlos spent
9 more time with her grandson Manuel.  When Carlos was old enough to play the Nintendo
  then he would play with it with defendant in defendant's room.  The door to defendant's
10 room was always open.  When Jane came on the visits, she spent most of her time with
  Jane's grandfather or father.  Rachel spent most of the visits with Sally in Sally's
11 bedroom, which was down the hall from defendant's room.

12    Defendant's father Johnnie testified that he has babysat Jane since she was a baby.
  When she visited his home, Jane was always with him.  She went with him everywhere
13 he went.  Sometimes defendant and Jane watched cartoons together downstairs or in his
  room, and one time Jane stayed to watch cartoons with defendant while Johnnie went to
14 the store. Johnnie did not remember ever seeing Jane in defendant's room alone with him.
  Carlos spent most of time during his visits downstairs watching television or sleeping.
15 Often defendant would be downstairs watching television with Carlos.  Sometimes Carlos
  would be upstairs playing with defendant.  Defendant's door would always be open.
16
    Manuel, defendant's nephew, testified that he was eight years old and shared a
17 bedroom with defendant at the time he first met Rachel and Carlos.  Carlos is about three
  years younger than Manuel, and defendant is about six years older.  During the early
18 visits, Carlos would be under the close supervision of his mother.  Carlos was not allowed
  to be in Manuel's bedroom because he was too young.  He was never alone with either
19 Manuel or defendant in the room.  If Carlos came into the room when Manuel and
  defendant were in there, Carlos would only be allowed to stay a few minutes before he
20 was ushered out.

21
    Between the ages of 10 and 12, Manuel did not live with defendant.  They shared a
22 room again when Manuel returned at age 12 until he moved out at age 20.  Manuel did not
  see Carlos as frequently then as he had before.  Nothing inappropriate ever happened
23 during either time Manuel shared a room with defendant.  The bedroom door was always
  kept open, even while they slept.  And Manuel often had his friends Marcus, Brandon, and
24 David visiting him when Rachel and her children were visiting.  Sometimes Manuel
  would play basketball with Carlos.  Jane spent most of the visits with her grandfather.
25 Manuel never allowed Jane to play with the Nintendo.

26    Manuel's friend David testified that he used to live across the street from Manuel's
  grandmother and began visiting the home on almost a daily basis when he was about nine.
27 That is also about the time he met Carlos.  During his visits, Manuel and David would
  play video games, watch television, and eat.  Defendant would be there.  They were not
28 allowed to close the bedroom door.  They did not play with Carlos, who would usually be

1    downstairs with the rest of the family.

2        During the time that Manuel did not live in his grandmother's home, David still
visited the home once or twice a month. He does not recall ever seeing defendant there
3    when Carlos was there. When Manuel returned to the home, David[] again visited almost
daily. Carlos was still visiting then and Jane was a toddler. David did not play with
4    Carlos or Jane, and her never saw Manuel or defendant play with them. Jane favored her
grandfather.

5

6        Manuel's friend Brandon testified that he started visiting Manuel at Manuel's home
in 1993 or 1994, when he was in high school. Manuel introduced defendant to Brandon.
7    Brandon did not know Carlos, but he knew Jane. He had seen Jane in Manuel's home
four or five times. Sometimes Jane would come up to defendant's and Manuel's room
8    when they were there, but they did not want her there. Brandon never saw defendant play
with Jane.

9        Manuel's friend Marcus testified that he visited Manuel and defendant's home
frequently in the past five years, during his own high school years. He did not know
10   Manuel until then. He saw Jane at the home about two times, while somebody was
babysitting her. She was always downstairs watching television, and they were usually
11   in defendant's room. Marcus did not know Carlos.

12       Defendant testified that he was still in high school when he met Carlos, who was then
about five years old. At the time, he shared his bedroom with his nephew Manuel. Rachel
13   and Carlos would visit about once a month. Defendant would spend 15 minutes with
Carlos, at the most, during the visits. Defendant tried to be Carlos's friend, but sometimes
14   Carlos would bother him and he would ask Rachel to keep Carlos away from him. During
the first year, defendant only allowed Carlos in his room once, and that was to sleep
15   overnight. Manuel was not there at the time. Carlos was not alone in defendant's room
with him other than that time, and Carlos never slept in defendant's room again.
16   Defendant had toys and Nintendo in his room, but he did not let Carlos play with the
Nintendo until he was nine or ten. Manuel was usually in the room when Carlos was
17   there. They never had the door closed. Carlos spent more time with Manuel then he did
with defendant.

18

19       After Jane was born, the family visits increased to about three times a month, and
then decreased again when Jane was about four. Carlos did not come on most of these
20   visits. Defendant spent most of the time during the visits at a friend's house. When he
was there with Jane, he would watch television with her downstairs. He was only left
21   alone with her once, and then only for 15 minutes while his father went to the store.
When Jane was four, she told Rachel that defendant had touched her the wrong way, but
22   he denied it. Defendant tried to avoid Jane after that.

23       Carlos was recalled and testified via telephone that in June or July 1997 he began
using the handle of a toilet plunger to penetrate his own rectum. He did this about five
24   times, the last time in August 1997. He never put anything else in his rectum.

25       Jane was recalled and testified that the one time her brother touched her
inappropriately he just rubbed himself up against her. He never did anything to her at any
26   time other than that. She once told her mother before she was eight about defendant
touching her. She did not remember how old she was, but remembered saying that
27   defendant once touched his hands on her private parts, hurting her. Defendant was nicer
to her after that, and did not hurt her as much when he touched her. Defendant continued
28   to touch her, but she waited to tell her mother again because she was afraid and did not
know if defendant would hurt her.

1    Exh. H at 2-10; *see also* Exhs. G, Respondent's Brief at 2-4 (respondent's statement of facts with

2    record citations (on direct appeal)), M, Appellant's Opening Brief at 6-12 (prosecutor's statement

3    of facts with record citations (on review of partial habeas grant)).

4                              **STANDARD OF REVIEW**

5           A federal court may grant a writ of habeas corpus to a state prisoner only if the state

6    court's rulings "resulted in a decision that was contrary to, or involved an unreasonable application

7    of, clearly established Federal law, as determined by the Supreme Court of the United States" or was

8    "based on an unreasonable determination of the facts in light of the evidence presented" in the state

9    courts. 28 U.S.C. § 2254(d). Under the "contrary to" clause, a state court's decision is contrary to

10   federal law if it "contradicts the governing law set forth in our cases" or if it "confronts a set of facts

11   that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result

12   different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). That test does "not

13   require citation of our cases—indeed, it does not even require *awareness* of our cases, so long as

14   neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*,

15   537 U.S. 3, 8 (2002) (per curiam). The ultimate controlling authority is the holding, not the dicta,

16   of the Supreme Court's cases at the time of the relevant state-court decision. *Carey v. Musladin*, 549

17   U.S. 70, 127 S. Ct. 649, 653 (2006); *see Wright v. Van Patten*, ___ U.S. ___, 128 S. Ct. 743 (2008)

18   (per curiam). The state courts are presumed to "know and follow the law," and the standard for

19   evaluating state-court rulings, which are given the "benefit of the doubt," is "highly deferential."

20   *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). In order to warrant habeas relief, the

21   state court's application of clearly established federal law must be not merely erroneous, incorrect,

22   or even "clear error," but "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003).

23   It is the habeas petitioner's burden to make that showing. *Visciotti*, 537 U.S. at 25. Also, state court

24   factual determinations are presumed correct unless rebutted by clear and convincing evidence. 28

25   U.S.C. § 2254(e)(1).

26          Even if the state court's ruling is contrary to or an unreasonable application of Supreme

27   Court precedent, that error justifies overturning the conviction only if the error had "substantial and

28   injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S.

619, 637 (1993).  The *Brecht* standard applies to all § 2254 cases, regardless of the type of harmless

error review conducted by the state courts.  *Fry v. Pliler*, ___ U.S. ___, 127 S. Ct. 2321 (2007).

**ARGUMENT**

**I.**

**PETITIONER WAS NOT DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILURE TO "RAISE" THE STATUTE OF LIMITATIONS AS A DEFENSE**

Petitioner contends his trial counsel was ineffective for "failure to raise at trial the defense

of the statute of limitations against the charges involving Carlos."  Petition at 3.  Petitioner did not

exhaust state remedies for this claim, but it may be denied, nonetheless, on the merits.  The state

court reasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), in rejecting petitioner's

claim.

**A.    Exhaustion**

Petitioner did not exhaust state remedies for his claim.  On direct appeal, petitioner

claimed the offenses against Carlos were barred by the statute of limitations.[3/]  Exhs. G, Appellant's

Opening Brief at 13, H at 10.  He did not raise an ineffective assistance claim related to the statute

of limitations, however.  In his petition for writ of habeas corpus in the Santa Clara County Superior

Court, petitioner *did* raise an ineffective assistance claim on the statute of limitations issue, *see* Exh.

J at 9, 146-47, but he did not carry it beyond that point.  *See* Exhs. M-O.  Critically, he did not

present such a claim in his petition for review to the California Supreme Court from the denial of

his state habeas.  *See* Exhs. I, O.  The claim is therefore not exhausted.  While relief is barred on the

issue, 28 U.S.C. § 2254(b)(1), *Duncan v. Henry*, 513 U.S. 364, 365 (1995), this Court may

nonetheless deny it on the merits, *id.* § 2254(b)(2), for the reasons that follow.

**B.    The State Court Ruling**

As indicated, petitioner presented this claim to the Santa Clara County Superior Court on

collateral review.  That court denied the claim as follows:

---

3.  Petitioner does not raise such a claim here.  *See* Petition at 3.  The state court's conclusion that the offenses against Carlos were not time barred, is conclusively presumed correct.

1        [T]here was no prejudice in petitioner's attorney not raising the statute of limitations argument at trial. As stated in the Court of Appeal decision, there was sufficient evidence under Penal C[ode] Sec. 803(g), extending the statute of limitations. Raising the issue below would not have resulted in a more favorable verdict.

4   Exh. J at 147.

5     **C.    The Merits**

6         To warrant relief here, petitioner must show that the state courts' rejection of his

7   ineffective assistance claim was an unreasonable application of *Strickland v. Washington*, 466 U.S.

8   668. *See* 28 U.S.C. § 2254(d)(1). To establish an ineffective assistance claim under *Strickland*,

9   petitioner first must show counsel's performance was deficient, i.e., that his representation fell below

10  an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S.

11  at 687-88. It is "strongly presumed" that counsel "rendered adequate assistance and made all

12  significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. In short,

13  judicial review of an attorney's actions are "highly deferential—and doubly deferential when it is

14  conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003).

15        Petitioner must also show prejudice flowing from counsel's performance or lack thereof.

16  *Strickland*, 466 U.S. at 691-92. Prejudice is shown when there is a reasonable probability that, but

17  for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at

18  694.

19        As respondent explained in state court, petitioner's offenses against Carlos were

20  chargeable due to the statute of limitations tolling period in California Penal Code section 803(g).

21  Exh. H at 10. That provision applies only if, inter alia, "'there is independent evidence that clearly

22  and convincingly corroborates the victim's allegation.'" Exh. H at 11 (quoting former Cal. Penal

23  Code § 803(g)(1)(B)). The court of appeal on direct review found that there was independent

24  evidence that clearly and convincingly corroborated Carlos's allegations:  the evidence of

25  petitioner's offenses against Jane, and Dr. Rosas's testimony regarding the scarring around Carlos's

26  anus. Exh. H at 13-14.

27        Petitioner claims, "Because counsel never raised the statute of limitations defense, the

28  prosecution was never put to the burden of establishing clear and convincing evidence in

1  corroboration." Petition at 4. Petitioner's claim fails on its faulty premise. That is, the prosecution

2  bore an *affirmative burden* of proving the requirements of section 803(g)(1) by clear and convincing

3  evidence, whether petitioner's trial counsel raised the issue or not. *See People v. Riskin*, 143 Cal.

4  App. 4th 234, 238-41 (2006); *People v. Linder*, 139 Cal. App. 4th 75, 84-85 (2006). Because

5  petitioner was convicted, the court necessarily found that the requirements of section 803(g)(1) had

6  been proven by clear and convincing evidence. Petitioner has never challenged the sufficiency of

7  the evidence supporting that finding, and cannot do so by implication here.

8      Petitioner also fails to specify what trial counsel should have done on the issue of section

9  803(g)(1). *See* Petition at 4. He does not suggest, for example, that there was defense evidence

10  disproving the elements of section 803(g)(1). To show ineffective assistance, petitioner must do

11  more than simply assert that trial counsel should have "raised" an issue. Petitioner's claim appears

12  to distill to an assertion that there was not sufficient evidence to support the finding, and that had

13  counsel pointed this out, the result would have been different. *See* Petition at 4. As we have

14  explained, however, the prosecution bore the burden of proving section 803(g)(1), and the

15  sufficiency of the evidence supporting the court's finding is not challenged (as such) in this Court.

16      Whatever his claim of error, petitioner cannot show prejudice. There was abundant

17  corroborating evidence, as the state court pointed out, in the evidence of petitioner's molestations

18  of Jane, and Dr. Rosas's testimony regarding Carlos's scarring. Exh. H at 14. The question of

19  corroborating evidence was not even close, contrary to petitioner's suggestion, *see* Petition at 4.[4/]

20      In summary, the state court reasonably applied *Strickland* in rejecting petitioner's claim

21  that his counsel prejudicially erred by failing to "raise" the issue of the statute of limitations. The

22  prosecution bore an affirmative burden to prove the limitations statute had been met, and the

23  sufficiency of that proof is not challenged here. There was, in any event, abundant corroborating

24  evidence for purposes of section 803(g)(1).

25

26  _____

27  4. Petitioner argued in state court that the requirements of section 803(g)(1) could not be met
based on other charged offenses. Exh. I at 9. He does not appear to raise that argument here, but
to the extent he does, it is foreclosed as a challenge to the state court's interpretation of its own

28  statute. *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993).

## II.

**PETITIONER'S RIGHTS TO CONFRONTATION AND PRESENCE WERE WAIVED, AND PETITIONER WAS NOT PREJUDICED IN ANY WAY BY HIS ABSENCE**

Petitioner contends that his rights to confrontation and presence were violated by his absence from defense counsel's further examination of victim Carlos by telephone. Petition at 4-5. Petitioner through counsel waived his presence and confrontation rights. He was not, in any event, prejudiced by his absence.

### A.    The State Court Decision

Petitioner raised the instant claim on direct review. The state court rejected the claim as follows:

Rights of confrontation

After defendant testified, defense counsel informed the court that he wished to recall Rachel, Jane and Carlos. During the discussion, which occurred around 10:40 a.m. on March 26, 1999, the court ordered Rachel and Jane returned and asked if they could be available that afternoon. The court then ordered defendant to return at 2:00 p.m., and indicated for the record that defense counsel was going to call Carlos[5] "and talk with him concerning the plunger that is in the medical records."

After recessing while defense counsel made the telephone call, the court reconvened at 11 a.m. with the district attorney and defense counsel present, and Carlos on the telephone. Defense counsel waived defendant's presence. After Carlos's telephone testimony as stated above, and termination of the telephone call, the following occurred.

"THE COURT: The reason that you waived your client's presence was that he left; right?

"[DEFENSE COUNSEL]: It was my fault, your Honor. He asked me to come back at 2:00 and I said yes, forgetting we were going to have the conversation.

"THE COURT: And we didn't know we could get the boy this quickly because he had to be pulled out of class.

"[DEFENSE COUNSEL]: I will advise my client. Maybe we can make a brief transcript of the conversation, and my client can have . . . it prior to the next court date." The court then recessed until 2:00 p.m., at which time defendant was present and Jane and Rachel were recalled to testify.

Defendant now argues that the questioning of Carlos by telephone constituted a denial of his rights of confrontation, in that he did not have a face-to-face meeting with Carlos, and the court, as the trier of fact, was unable to observe Carlos's demeanor. He argues that counsel had no authority to waive defendant's presence due to counsel's error.

---

5.  Carlos was still residing at the Martin House.

He further argues that he was prejudiced as Carlos's telephone testimony was important to the prosecution's case, but was intrinsically doubtful.  The People argue that defense counsel's waiver of Carlos's personal presence before both the court and defendant was valid and binding, and that defendant suffered no prejudice because of it.

"The right guaranteed by the Confrontation Clause includes not only a 'personal examination,' [citation], but also '(1) insures that the witness will give his statements under oath . . .; (2) forces the witness to submit to cross-examination . . .; [and] (3) permits the [trier of fact] that is to decide the defendant's fate to observe the demeanor of the witness in making his statement . . . .' [Citation.]"  (*Maryland v. Craig* (1990) 497 U.S. 836, 845-846, 111 L. Ed. 2d 666, 110 S. Ct. 3157 (Craig).)  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  (*Id.* at p. 845.)  "The Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities [such as forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness'[s] testimony . . . ."  (*Delaware v. Fensterer* (1985) 474 U.S. 15, 22, 88 L. Ed. 2d 15, 106 S. Ct. 292; *Craig*, *supra*, 497 U.S. at p. 847.)  "In sum, our precedents establish that 'the Confrontation Clause reflects a preference for face-to-face confrontation at trial [citation], a preference that 'must occasionally give way to considerations of public policy and the necessities of the case,' [citation]."  (*Craig*, *supra*, 497 U.S. at p. 849.)  "Indeed, one commentator has noted that 'it is all but universally assumed that there are circumstances that excuse compliance with the right of confrontation.' [Citation.]"  (*Id.* at p. 850.)

"'In both civil and criminal matters, a party's attorney has general authority to control the procedural aspects of the litigation and, indeed, to bind the client in these matters'; in other words, 'counsel is captain of the ship.'  [Citation.]  The attorney may not, however, bind the party as to certain fundamental matters.  [Citations.]  For example, in a criminal case, only the defendant personally may waive a jury trial.  [Citations.]"  (*People v. Masterson* (1994) 8 Cal.4th 965, 969, 884 P.2d 136, italics omitted.)  In this case, counsel waived defendant's presence during telephone testimony in chambers during a court trial.  Our Supreme Court has held "'that the defendant's absence from various court proceedings, "even without waiver, may be declared nonprejudicial in situations where his presence does not bear a 'reasonably substantial relation to the fullness of his opportunity to defend against the charge.'"" [Citation.]"  (*People v. Carpenter* (1997) 15 Cal.4th 312, 376, 935 P.2d 708.)

Defendant and the court were both present during Carlos's original testimony and cross-examination, and during the examination and cross-examination of Dr. Rosas.  Defense counsel received Dr. Rosas's additional medical reports at the time she testified, so he could not cross-examine Carlos at the time he originally testified about the information in the additional medical reports regarding Carlos's self-infliction of a toilet plunger in his rectum.  Instead, after defendant testified in his own behalf, defense counsel persuaded the trial court to permit him to recall Carlos regarding that information.  Given Carlos's location, he would not be available to testify that day except by telephone call.  The telephone call to Martin House was then made and, instead of waiving the opportunity to question Carlos, defense counsel expressly waived defendant's right to be present and impliedly waived defendant's right to have Carlos testify in person in order to get the information on the record.  Moreover, defendant apparently received a transcript of the testimony.  Although Carlos's testimony was directly relevant to the charges against defendant, defendant's absence at the brief proceeding did not bear a reasonable relation to the fullness of his opportunity to defend against the charges.  (See, *People v. Carpenter*, *supra*, 15 Cal.4th at p. 378.)  Defense counsel's partial waiver of defendant's

1    confrontation rights was binding on defendant.  (See also, *People v. Rios* (1992) 9
2    Cal.App.4th 692, 702 [defense counsel's acceptance of the terms of an in chambers
     meeting constituted a binding partial waiver of the defendant's right to confrontation].)
3    No prejudicial error has been shown.

4    Exh. H at 15-17 (footnote renumbered).

5    **B.    Argument**

6    **1.    Background**

7    Carlos testified in person on March 4, 1998, and March 24, 1999.  CT 222-42; RT 201-68.

8    On March 26, 1999, defense counsel informed the court of intentions to recall, inter alia, Carlos.

9    RT 458.  Defense counsel wanted to question Carlos about information contained in Dr. Rosas'

10   medical reports that Carlos had anally penetrated himself with the handle of a toilet plunger during

11   the early stages of his therapy.  *See* Exh. B at 18; RT 459.  Over the People's objection, RT 461, the

12   court permitted further questioning of Carlos.  RT 463.  In chambers, the trial judge and both

13   attorneys contacted Carlos at the Martin Achievement Place by telephone.  RT 466.  Petitioner was

14   inadvertently absent.  RT 468; *see* Exh. H at 14-15.  Rather than lose the opportunity to recall

15   Carlos, defense counsel waived petitioner's presence.  Defense counsel assured that court that he

16   would review a copy of the transcribed phone conversation with petitioner before his next court

17   appearance.  RT 468.  Petitioner never personally objected to his absence.

18   **2.    Waiver**

19   As the state court found, petitioner, through counsel, waived his right to presence.

20   Petitioner does not directly challenge the waiver, other than to suggest it was not legitimate.  *See*

21   Petition at 5 ("Counsel, Mr. Guzetta, purported to waive defendant's presence . . . .").  He offers no

22   authority or discussion, however, to support his innuendo.

23   To our knowledge, the Supreme Court has never held that a defendant's trial counsel is

24   prohibited from partially, or for a limited period, waiving the defendant's right to presence.  *See* 28

25   U.S.C. § 2254(d)(1); *Carey v. Musladin*, 127 S. Ct. 649.  As the state court explained, such a waiver

26   is permitted under California law, and was permitted here.  Exh. H at 16-17.  Petitioner may not

27   relitigate whether the waiver was permissible under California law, *see Smith v. Phillips*, 455 U.S.

28   209, 221 (1982), but only whether any Supreme Court holding requires a personal waiver from a

1   defendant, or precluded counsel from entering the limited waiver that he did, under circumstances

2   similar to those here.  Absent such a holding, petitioner cannot be entitled to habeas relief on a claim

3   that counsel's waiver was invalid.  *See* 28 U.S.C. § 2254(d)(1); *Carey v. Musladin*, 127 S. Ct. at 649.

4   Petitioner is not, therefore, entitled to habeas relief.

5        **3.**   **Error**

6        Even assuming, arguendo, counsel's waiver was not binding on petitioner, petitioner's

7   presence, under the circumstances, was not constitutionally compelled.

8        Under the Due Process Clause, a criminal defendant has a right "to be present in his own

9   person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity

10   to defend against the charge."  *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (quoting *Snyder v.*

11   *Massachusetts*, 291 U.S. 97, 105-106 (1934)).  The "privilege of presence is not guaranteed 'when

12   presence would be useless, or the benefit but a shadow.'"  *Stincer*, 482 U.S. at 745 (quoting *Snyder*,

13   291 U.S. at 106-07).  "Thus, a defendant is guaranteed the right to be present at any stage of the

14   criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of

15   the procedure."  *Id.*; *see also United States v. Gagnon*, 470 U.S. 522, 527 (1985) (per curiam)

16   (defendants' absence did not violate the Due Process Clause where their presence was not needed

17   to "ensure fundamental fairness" and they could not have added to or gained from being present at

18   the conference).

19        We have found no Supreme Court holding setting forth a per se rule that a defendant's

20   presence is constitutionally compelled any time testimony is taken.  This circumstances here

21   demonstrate why that is so.  Specifically, on this record, petitioner's presence did not have "a

22   relation, reasonably substantial, to the fulness of his opportunity to defend against the charge."

23   *Kentucky v. Stincer*, 482 U.S. at 745.  As we have detailed in our prejudice discussion, *infra*,

24   subsection (B)(3), petitioner's presence could not have "contribute[d] to the fairness of the

25   procedure."  *Id.*  In a nutshell, Carlos had already testified in full, and his additional testimony was

26   brief, taken over the telephone, and did not relate to the offenses or petitioner.  Accordingly, the

27   state court's conclusion was not objectively unreasonable.

28

1       **4.   Prejudice**

2           Even assuming, arguendo, petitioner did not waive his presence through counsel, and had

3   a constitutional right to be present during the additional exam of Carlos, petitioner's absence did not

4   have "substantial and injurious effect or influence" in determining the court's verdict. *Brecht v.*

5   *Abrahamson*, 507 U.S. at 637; *see Campbell v. Rice*, 408 F.3d 1166, 1171-72 (9th Cir 2005) (en

6   banc) (error in defendant's absence subject to harmlessness analysis under *Brecht*).

7           Carlos had already testified in full, in the presence of the trial judge and petitioner, twice.

8   At both the grand jury hearing and court trial, Carlos testified in detail to his sexual abuse

9   allegations.  He did so face-to-face with petitioner, petitioner's family and the judge.  The central

10  concern of the Confrontation Clause is to ensure the reliability of the evidence against a defendant

11  by subjecting the evidence to testing by an adversary proceeding before the trier of fact.  *See*

12  *Maryland v. Craig*, 497 U.S. 836, 845 (1990).  That goal was accomplished well before defense

13  counsel sought to ask additional questions of Carlos.  Further, as the examination occurred over the

14  phone, questions of face-to-face confrontation and physical demeanor were not implicated.

15          Further, the additional testimony from Carlos was brief, *see* RT 466-68, and pertained to

16  events that had occurred long after the offenses and involved only Carlos's sexual behavior towards

17  *himself*.  That is, Carlos was not questioned about the offenses, and petitioner's name was never

18  mentioned.  Last, Carlos's self-penetration was included in Dr. Rosas' reports and determined to

19  have had no effect on the scarring that Carlos had received from petitioner's earlier sexual abuse.

20          Petitioner counters that "cross-examination of Carlos in petitioner's presence would have

21  shown that Carlos was deliberately deceptive and perjuring himself in his testimony on this subject

22  . . . ."  Petition at 5-6.  He utterly fails to explain, however, how his presence could have affected

23  his counsel's cross-examination, particularly when the subject of that examination, Carlo's apparent

24  sexual abuse of himself, years after the offenses, was something petitioner could not have known

25  anything about.

26          Last, defense counsel further remedied any possible prejudice by having the additional

27  testimony transcribed and explained to petitioner.  *See* RT 468.  Counsel's actions are a factor to

28  consider when deciding whether prejudice occurred.  *See, e.g.*, *People v. Hovey*, 44 Cal. 3d 543, 573

1    (1988) (no prejudice when defendant was excluded from an in chambers hearing about the

2    competence of his defense counsel where counsel agreed to discuss the matter of continued

3    representation and report back any of defendant's questions or his desire to change attorneys);

4    *People v. Carpenter*, 15 Cal. 4th 312, 376 (1997) (no prejudice when the court explained to absent

5    defendant what had transpired in chambers).

6                                            **III.**

7    **PETITIONER'S RIGHT AGAINST EX POST FACTO PUNISHMENT
     WAS NOT VIOLATED**

8

9            Petitioner contends that he was denied his Sixth Amendment right against ex post facto

10   punishment by the imposition, under California Penal Code section 667.61(b), of a life term on count

11   36.    Petition at 6.    The state court reasonably applied Supreme Court holdings in rejecting

12   petitioner's claim.  *See* 28 U.S.C. § 2254(d)(1).

13       **A.    The State Court Decision**

14           Petitioner raised his claim before the California Court of Appeal on direct review.  The

15   court denied the claim as follows:

16       Section 667.61

17           As stated above, an allegation under section 667.61, subdivision (b), seeking a life
         term on grounds that defendant had been convicted of sex offenses against two different
18       victims in this proceeding, was orally added to the consolidated indictment and
         information during trial.  The court found the allegation true, and the court subsequently
19       imposed a life term for count 36, a violation of *section 288, subdivision (a)*, involving
         Jane.  Defendant argues that the application of section 667.61 in his case violates ex post
20       facto principles because his offenses against Carlos occurred in 1990 and 1991, prior to
         the operative date of the statute.  We disagree.
21
22           The ex post facto clauses of the federal and state Constitutions prohibit the
         imposition of punishment which, after commission of a crime, has been increased or made
23       more burdensome.  (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9; *In re Paez* (1983) 148
         Cal. App. 3d 919, 922, 196 Cal. Rptr. 401, disapproved on other grounds by *In re Ramirez*
24       (1985) 39 Cal.3d 931, 938, 218 Cal. Rptr. 324, 705 P.2d 897.)  "The critical question is
         whether the law changes the legal consequences of acts completed before its effective
         date."  (*Weaver v. Graham* (1981) 450 U.S. 24, 31, 67 L. Ed. 2d 17, 101 S. Ct. 960.)
25
26           Section 667.61 became effective November 30, 1994.  (Stats. 1994, 1st Ex. Sess., ch.
         14, § 1, p. 8570.)  The *section 288, subdivision (a)* offense involving Jane, count 36,
27       occurred in 1997, long after the effective date of section 667.61.  Section 667.61 provides
         that a person convicted of violating *section 288, subdivision (a)*, who has been convicted
28       in the present case or cases of committing such an offense against more than one victim
         shall be punished by imprisonment for 15 years to life.  (§ 667.61, subds (b), (c)(7) &

(e)(5).)  We agree with respondent that the matter that precipitates the life term is the commission of a qualifying offense after the effective date of the statute.  The sentencing scheme in section 667.61 is analogous to recidivist enhancements that increase punishment for a crime committed after the effective date of the statutory change because of a conviction for a crime prior to that date. (See, e.g., *People v. Snook* (1997) 16 Cal.4th 1210, 947 P.2d 808 [enhanced penalty for repeat driving under the influence offenders]; *People v. Williams* (1983) 140 Cal. App. 3d 445, 189 Cal. Rptr. 497 [enhancement under section 667.5, subd. (b), for prior convictions predating the enactment of the statute].)  "In the context of habitual criminal statutes, 'increased penalties for subsequent offenses are attributable to the defendant's status as a repeat offender and arise as an incident of the subsequent offense rather than constituting a penalty for the prior offense.' [Citation.]" (*People v. Jackson* (1985) 37 Cal.3d 826, 833, 210 Cal. Rptr. 623, 694 P.2d 736.)

Here, defendant was convicted of a qualifying offense, count 36, after the effective date of section 667.61.  The court imposed a life term for that count under section 667.61 because defendant was a repeat offender.  The sentence arises as an incident of the later offense rather than constituting a penalty for the earlier offense.  No ex post facto violation has occurred.

Exh. H at 17-18.

## B.  Argument

The state court reasonably applied Supreme Court holdings in rejecting petitioner's claimed ex post facto violation.  Petitioner received a life sentence on count 36 based on California Penal Code section 667.61, which provided:

(b) Except as provided in section (a), a person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 15 years . . . .

(c) This section shall apply to any of the following offenses: . . . . [¶] (7) A violation of subdivision (a) of Section 288, unless the defendant qualifies for probation under subdivision (c) of Section 1203.066.

. . . .

(e) The following circumstances shall apply to the offenses specified in subdivision (c): . . . . [¶] (5) The defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim.

Cal. Stats. 1993-94, 1st Ex. Sess., c. 14 (S.B. 26), § 1, page 8570 (former version of Cal. Penal Code § 667.61).

As the state court explained, petitioner was convicted in count 36 of lewd or lascivious acts against Jane, in violation of California Penal Code section 288(a).  CT 116, 208.  He received a life term for that offense under the sentence enhancement contained in California Penal Code

section 667.61(b).  Section 667.61 was enacted in 1994, while the offenses against Jane occurred in 1996 and 1997.  There is no retroactive application of the law.

Petitioner's claim to the contrary is based on the fact that his molestation of victim *Carlos* occurred prior to the enactment of section 667.61.  *See* Petition at 6.  Petitioner's triggering offense, however, was that against *Jane*, not Carlos.  That petitioner's offenses against Carlos constituted part of the multiple victim conviction circumstance under section 667.61(e)(5) did not violate ex post facto proscriptions.  As the state court found, section 667.61(e)(5) is analogous to a recidivist statute that increases punishment for a crime committed after the effective date of the statute (here, against Jane), based in part on a conviction for a crime that occurred prior to the effective date of the statute (here, against Carlos in part).  Exh. H at 18.  The Constitution does not prohibit such punishment.  *See Monge v. California*, 524 U.S. 721, 728 (1998); *Nichols v. United States*, 511 U.S. 738, 747 (1994); *Parke v. Raley*, 506 U.S. 20, 27 (1992); *Denton v. Duckworth*, 873 F.2d 144, 147 (7th Cir. 1989).

## IV.

### PETITIONER WAS NOT DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN COUNSEL'S FAILURE TO PRESENT A MEDICAL EXPERT

Petitioner contends his trial counsel was ineffective for failing to "investigate, prepare, and challenge medical testimony" about the two victims, Carlos and Jane.[6/]  Petition at 7-8.  The state court reasonably applied *Strickland* in rejecting petitioner's claim.  *See* 28 U.S.C. § 2254(d)(1).

---

6.  Petitioner appears to raise an ineffectiveness claim relating to the counts against Carlos—not just Jane.  *See* Petition at 7-8.  To the extent he does, such a claim is unexhausted.  On collateral review, the trial court granted relief on two counts (36 & 37) involving Jane, but otherwise denied relief, i.e., on the counts related to Carlos.  Exhs. J at 182-91, 146-47, N at 2.  The prosecutor appealed from the grant of relief, but petitioner did not cross-appeal, or independently appeal, from the denial of relief.  *See* Exhs. J at 195, N.  Likewise, in his petition for review, petitioner challenged the court of appeal decision, which only addressed the two reversed Jane counts.  Exh. O.  In sum, petitioner did not exhaust the instant ineffective assistance claim beyond the two counts (36 & 37) related to Jane.  While relief is barred on the unexhausted portion of the instant claim, 28 U.S.C. § 2254(b)(1), *Duncan v. Henry*, 513 U.S. at 365, this Court may nonetheless deny it on the merits, *id.* § 2254(b)(2), for the reasons discussed.

Memo. of Points and Auth. in Support of Answer - *Torrez v. Martel* - C 08-1309 TEH

### A.    The State Court Opinion

The California Court of Appeal rejected petitioner's claim as follows:

On November 12, 2004, defendant filed a petition for writ of habeas corpus in the trial court, contending that he was denied his right to effective assistance of trial counsel. Specifically, he argued that counsel (1) failed to investigate, prepare, and challenge the prosecution's medical testimony regarding Carlos and Jane, and failed to present medical testimony for the defense; (2) failed to impeach Carlos with his prior statement to investigators; (3) failed to obtain discovery, including Carlos's juvenile court records; (4) failed to impeach Carlos with evidence of his prior conduct and juvenile adjudications; and (5) failed to raise and present a statute of limitations defense. Ten exhibits were attached to the petition, and were incorporated by reference. Exhibit 1 was this court's opinion on appeal. Exhibit 2 was a printout of docket entries showing that defendant's petition for review in the Supreme Court was denied. Exhibit 3 was a declaration from defendant's habeas counsel stating that he had asked defendant's trial counsel "whether he had consulted with or retained any medical experts in the case" and that trial counsel had said that "he had not done so."

Exhibits 4 and 5 were declarations from Lee Coleman, M.D., a child psychiatrist. In exhibit 4, Dr. Coleman stated that he had reviewed Carlos's medical records and the trial testimony of Dr. Rosas. In Dr. Coleman's opinion, "the trial testimony of Dr. Rosas was a travesty, and the failure to call a physician to rebut [her] claims was a major injustice perpetrated on Mr. Torre[z]." In exhibit 5, Dr. Coleman stated that he had reviewed Jane's medical report and the trial testimony of Dr. Kerns. In Dr. Coleman's opinion, "the examination of this child, as described in the report, was completely normal."

Exhibit 6 was an underlying police report, which included a transcript of Carlos's November 26, 1997 telephone conversation with an investigator. Exhibit 7 was Dr. Rosas's medical reports concerning Carlos. Exhibit 8 was the Welfare and Institutions Code section 827 petition by defendant requesting Carlos's juvenile court records. Exhibit 9 was the reporter's transcript of a July 13, 1998 hearing concerning that petition. Exhibit 10 was an order settling the record in defendant's appeal.

No declaration from defendant's trial counsel was attached as an exhibit.

On January 10, 2005, the trial court issued an order to show cause, finding that defendant had set forth a prima facie case for ineffective assistance of counsel. The District Attorney filed the return to the order to show cause on April 8, 2005, contending that defendant could not carry his burden of showing that counsel was incompetent or that he was prejudiced. As relevant to this appeal, the District Attorney argued that counsel thoroughly cross-examined both of the prosecution's medical experts and there were valid tactical reasons to not hire a defense expert. Attached to the return as exhibit A was a copy of a letter the District Attorney sent to defendant's trial counsel on February 10, 2005, asking trial counsel to review his file and defendant's petition and to "prepare an affidavit covering [his] representation of Mr. Torrez" in response to the petition. No affidavit by counsel was attached.

Defendant filed his traverse to the return on September 14, 2005, contending that "[a] failure even to consult an expert cannot possibly be 'tactical,' " and that the trial court should conduct an evidentiary hearing to determine whether defendant suffered prejudice because "the trial court found Carlos and [Jane] credible when their accusations were supported by unchallenged medical testimony."

On November 28, 2005, the trial court filed its order "that an evidentiary hearing take place for the limited purpose of addressing the following issues: (1) whether [defendant's] attorney failed to provide an expert to challenge the medical testimony at the trial resulting in prejudice to [defendant], and (2) whether [defendant's] attorney['s] failure to question Carlos directly with his prior conduct against other children resulted in prejudice." The court rejected the remaining issues presented in the habeas corpus petition as grounds for relief. At a hearing on July 14, 2006, the court stated: "I think, the order speaks for itself. [¶] I think, it's clear. [¶] I made the assumption that the first prong of *Strickland* [*v. Washington* (1984) 466 U.S. 668 (*Strickland*)] had been shown by virtue of the petitions based on what was presented at the time, notwithstanding the subsequent events, I'm going to stand by that particular order. [¶] So, the issue will be whether or not the petitioner can show prejudice, of course, goes to the heart of everything in consideration here."

The evidentiary hearing was held on September 1, 2006. Defendant presented the testimony of Dr. Coleman and Dr. James Crawford, a pediatrician and the medical director of the Center for Child Protection at Children's Hospital in Oakland. The prosecutor presented no witnesses other than the trial judge, who testified over defendant's objection and subject to a motion to strike. At defendant's request, the court took judicial notice of the transcripts of the trial testimony.

The court accepted Dr. Coleman as an expert in the area of child sexual assault examinations. Dr. Coleman testified that he examined the photographs from and the report of Jane's medical examination by Mary Ritter and Dr. Kerns, as well as the trial testimony of Dr. Kerns. The report states that Jane's hymeneal rim was abnormally narrow, which was indicative of sexual abuse. During Dr. Kerns's testimony, he continued to maintain that the narrow hymeneal rim was indicative of abuse. In Dr. Coleman's opinion, Dr. Kerns is contradicting "established knowledge in the field." The photographs show that the hymeneal rim is not necessarily narrow in some areas, there is no evidence that the narrow rim was abnormal, and having a narrow hymeneal rim as a result of sexual trauma "completely violates basic medical understanding of the human body." Dr. Coleman does not see anything in the photographs "that depict signs of sexual penetration or trauma or molestation as those signs have been described in the current professional literature."

Dr. Coleman further testified that he reviewed the examination reports of Carlos written by Drs. Rosas and McCan, photographs, and the testimony by Dr. Rosas. The initial report describes pigmented areas around the anus which were not normal, but there was no conclusion that this was an indication of abuse. A later report describes a small laceration in the anus as well as surrounding redness, which would signify some recent trauma to the anus. Dr. Rosas testified that she concluded, after consulting with a dermatologist, that the dark spots were due to scarring from prior sexual trauma or prior injury. In Dr. Coleman's opinion, Dr. Rosas's conclusion "has no medical foundation, because . . . [in] none of the reports from the three examinations was there a claim that there was any scarring." Based on his examination of the photographs and his training and experience, in Dr. Coleman's opinion the discoloration was most likely either from a congenital variation or from some prior bleeding where the blood was not reabsorbed. Because Carlos had been diagnosed with encopresis,[7] he could have lacerations, abrasions, engorgement of the veins and bleeding in that area.

---

7.    Dr. Coleman defined encopresis as the "failure to have regular bowel movements."

1        Dr. Coleman also testified that, had he been consulted by an attorney in this case in
2    1998, 1999, or 2000, he would have been able and willing to express these same opinions
     and conclusions.

3        On cross-examination, Dr. Coleman testified that he did not interview Jane, her
4    mother, defendant, Ritter, or Dr. Kerns.  He came to the conclusion that the physical
     findings regarding Jane were not an indication of abuse based on her medical report and
5    prior to viewing her photographs.  He knows that Ritter has extensive experience in
     conducting exams of children suspected of sexual abuse while he has never personally
6    conducted such exams, but he does not believe that Ritter has more expertise in the area.
     He is aware that his opinion is contrary to what Jane has said, and that many victims of
7    sexual abuse do not exhibit any physical evidence of it.  His opinion is simply that the
     physical examination did not disclose signs of sexual abuse or trauma.

8        Dr. Crawford testified as an expert on child sexual assault examinations that he
9    reviewed the report of Jane's physical examination, copies of her photographs, and the
     transcript of the trial addressing her medical findings.  In his opinion, Jane's narrow
10   hymen is not necessarily evidence of prior trauma.  Even when a narrow hymen is caused
     by trauma, when there are allegations that more than one individual did something, there
11   is no way to identify which individual caused the trauma.[8/]  In his opinion, the findings
     as to Jane had no forensic value.

12       Dr. Crawford also reviewed two different medical reports regarding Carlos, copies
13   of his photographs, and the transcript of the trial testimony from Dr. Rosas addressing the
     medical findings.  Dr. Rosas identified a non-acute, or old, injury to the perianal area.  Dr.
14   Crawford agrees with the conclusion by Dr. Rosas in the initial medical report that the
     findings of a hyper-pigmented area was a non-suspect finding.  Dr. Crawford disagrees
15   with Dr. Rosas's trial testimony that the findings were evidence of scarring as it is not
     supported by anything he has seen himself or seen described in the literature.

16       Defendant argued that Drs. Coleman and Crawford disagree with Dr. Rosas's trial
17   testimony regarding Carlos and Dr. Kerns's reports regarding Jane, and their testimony
     "creates a clear conflict with respect to the credibility of that evidence."  Defendant
18   further argued that, if the defense had presented evidence that there was no basis to
     believe that Carlos exhibited scarring, the medical evidence would not have corroborated
19   Carlos's claims, which was required to bring the alleged offenses within the statute of
     limitations.  Therefore, it was reasonably probable that a different result could have been
20   obtained had this testimony been presented at trial.

21       The prosecutor argued that Jane testified at trial and was extensively cross-examined,
     that Jane identified defendant as her molester, that the cross-examination of Dr. Kerns
22   pointed out the strengths and weaknesses of his testimony, and that defendant's experts
     testified that sometimes there is no physical evidence when a child has been molested.
23   "So, regardless of whether there was expert testimony on behalf of the defendant, if [Jane
     is] believed, that testimony really is irrelevant."  The prosecutor further argued that Jane's
24   testimony corroborated Carlos's testimony, and that defendant was able to "undermine"
     Dr. Rosas's testimony during cross-examination, therefore "[i]t doesn't matter whether
25   or not the defense would have brought in other so-called experts."  "[I]t's the People's
     position that there would be no change in the verdicts."

26   _____

27       8.    Jane testified at trial that Carlos once touched her inappropriately by
28           rubbing himself up against her, and that Carlos never did anything
             else to her at any other time.

The court took the matter under submission and then filed its written order on September 29, 2006. In the order the court noted that defendant "presented no testimony or evidence" regarding the second issue in the order to show cause. It struck the trial judge's testimony, citing *Weidner v. Thieret* (7th Cir. 1991) 932 F.2d 626, and *Ng v. Superior Court* (1997) 52 Cal.App.4th 1010, disapproved on another point in *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1069, fn. 6. It stated again that it "made the assumption that the failure to call an expert to challenge the prosecution experts was below the professional norm and limited the hearing to an assessment of prejudice." It found it "clear" that defendant "produced evidence at the writ hearing that contradicts the testimony of [the prosecution's] expert witnesses at trial," and that the issue was "whether such contradictions prejudice" defendant. It then ruled as follows.

"The People's case was vigorously challenged by [defendant's] counsel. He challenged the underlying premises for the conclusions asserted by Dr. Kerns and Dr. Rosas. He put on a significant defense which will be characterized as 'alibi,' though far more reaching. The trier of fact heard from all the parties involved: the two victims, the parties to whom they reported the molestations, the police officer, the doctors who examined them and the mother of the victims. The defense presented substantial evidence that the allegations simply could not have happened. [Defendant's] mother, father, roommate and close friends both vouched for [defendant] and his time. [Defendant] also testified, denying the allegations. Indeed, when further information came out at trial, [defendant's] attorney recalled each victim as well as victims' mother to point out further inconsistencies in the evidence."

"The prosecution's experts had impressive credentials. Dr. Crawford's credentials were also impressive whereas Dr. Coleman's less so. It is apparent [defendant's] strategy wasn't so much to challenge the 'experts' with 'experts' (i.e., to wash them out) as to challenge the prosecution's case with the numerous inconsistencies adroitly demonstrated by his cross-examination and by presentation of his witnesses."

"Based on the foregoing, it is this court's conclusion that [defendant] was not prejudiced by his attorney's 'failure' to call competing experts with respect to Carlos but is prejudiced with respect to [Jane]."

"The petition is denied with respect to counts 13 through 32. The petition is granted as to counts 36 and 37; therefore, this court orders a new trial as to counts 36 and 37 only. The judgment and sentence as to counts 36 and 37, including the life sentence pursuant to Penal Code § 667.61(b-e) as to count 37 are therefore set aside."

The People filed a timely notice of appeal from the trial court's order.

DISCUSSION

The People contend that the trial court erred in both assuming that defendant's trial counsel acted incompetently and in finding that defendant was prejudiced thereby. Defendant contends that the pleadings do not dispute that trial counsel failed to consult with any medical expert, and the trial court correctly assumed that such a failure was unreasonable. Defendant further contends that the record supports the finding that he was prejudiced by trial counsel's failure to present his own expert testimony regarding Jane.

Defendant had the burden below of establishing ineffective assistance of trial counsel. (*People v. Lucas* (1995) 12 Cal.4th 415, 436.) "To establish a violation of the constitutional right to effective assistance of counsel, a defendant must not only 'identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' but he or she must also show that counsel's deficient performance

'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' (*Strickland*[, *supra*,] 466 U.S. 668, 686, 690; see also *People v. Kipp* (1998) 18 Cal.4th 349, 366.)" (*People v. Earp* (1999) 20 Cal.4th 826, 870.) "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, *supra*, 466 U.S. at p. 694.)

"Whether trial counsel performed competently, that is, 'reasonabl[y] under prevailing professional norms' (*Strickland*, *supra*, 466 U.S. at p. 688), presents a mixed question of fact and law. Such questions are 'generally subject to independent review as predominately questions of law—especially so when constitutional rights are implicated'—and 'include the ultimate issue, whether assistance was ineffective, and its components, whether counsel's performance was inadequate and whether such inadequacy prejudiced the defense.' [Citation.]" (*In re Resendiz* (2001) 25 Cal.4th 230, 248-249.) Accordingly, we are entitled "to undertake 'an independent review of the record [citation] to determine whether [defendant] has established by a preponderance of substantial, credible evidence [citation] that his counsel's performance was deficient and, if so, that [he] suffered prejudice.' [Citation.]" (*Id.* at p. 249.)

"While our review of the record is independent and 'we may reach a different conclusion on an independent examination of the evidence . . . even where the evidence is conflicting' [citation], any factual determinations made below are 'entitled to great weight . . . when supported by the record, particularly with respect to questions of or depending upon the credibility of witnesses the [superior court] heard and observed.' [Citations.] On the other hand, if 'our difference of opinion with the lower court . . . is not based on the credibility of live testimony, such deference is inappropriate.' [Citations.]" (*In re Resendiz*, *supra*, 25 Cal.4th at p. 249.)

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citation.] There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (*Strickland*, *supra*, 466 U.S. at p. 689.)

"Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment." (*Strickland*, *supra*, 466 U.S. at p. 690.)

The decision to call witnesses is a matter of trial tactics and strategy which a reviewing court generally may not second-guess. (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1059.)  "[T]he choice of which, and how many, of potential witnesses [to call] is precisely the type of choice which should not be subject to review by an appellate court." (*People v. Floyd* (1970) 1 Cal.3d 694, 709, disapproved on another point in *People v. Wheeler* (1978) 22 Cal.3d 258, 287, fn. 36.)  "To sustain a claim of inadequate representation by reason of a failure to call a witness, there must be a showing from which it can be determined whether the testimony of the alleged additional defense witness was material, necessary, or admissible, or that defense counsel did not exercise proper judgment in failing to call him. [Citation.]" (*People v. Hill* (1969) 70 Cal.2d 678, 690.)

"[B]efore counsel undertakes to act, or not to act, counsel must make a rational and informed decision on strategy and tactics founded upon adequate investigation and preparation." (*In re Marquez* (1992) 1 Cal.4th 584, 602.) "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." (*Strickland*, *supra*, 466 U.S. at pp. 690-691; *In re Jones* (1996) 13 Cal.4th 552, 565.)

With these principles in mind, we have reviewed the record before us.  As to the first prong of the *Strickland* test, deficient performance, the trial court "made the assumption that the failure to call an expert to challenge the prosecution experts was below the professional norm" based on its review of the petition, return, and traverse, "and limited the hearing to an assessment of prejudice."  We have reviewed the same record that was before the trial court and we conclude that the record before the trial court was insufficient as a matter of law to support its finding of deficient performance.

There is no competent evidence in the record that would support a finding that trial counsel failed to consult a medical expert.  Trial counsel did not submit a declaration and did not testify at the evidentiary hearing.[9/]  Habeas counsel's declaration as to what trial counsel said to him is inadmissible hearsay that cannot support a prima facie case for habeas relief. (*People v. Madaris* (1981) 122 Cal.App.3d 234, 242 [appellate attorney's sworn statement conveying an unsworn statement by trial counsel offered to prove the truth of the matter stated cannot support a prima facie case for habeas relief]; see also, *People v. McCarthy* (1986) 176 Cal.App.3d 593, 597 [allegations in the petition based on hearsay must be disregarded]; *In re Fields* (1990) 51 Cal.3d 1063, 1070 [a declaration cannot support a finding by a referee or an appellate court if it was excluded upon timely and proper objection or it was never offered into evidence at the evidentiary hearing].)  Thus, we must presume that counsel's decision to not call an expert to testify at trial was a matter of trial tactics and strategy (*People v. Mitcham*, *supra*, 1 Cal.4th at p. 1059), and, in order to grant habeas relief, the trial court had to find that defendant carried his burden of showing that counsel's decision fell below what is reasonable under prevailing professional norms. (*Strickland*, *supra*, 466 U.S. at p. 688.)

---

9.    The prosecutor had subpoenaed trial counsel, but did not present him as a witness due to the court's ruling at the July 14, 2006 hearing.

Defendant's theory of defense at trial was two part. First, defendant contended that he did not have access to the children, as they were not alone with him in his room. Second, defendant contended any touchings that may have occurred did not involve penetrating trauma. Counsel could have reasonably determined that calling an expert witness would not help, and might undermine, aspects of his defense.

As the court below found, counsel was able to "vigorously challenge[]" the prosecution's case, including "challeng[ing] the underlying premises for the conclusions asserted by Dr. Kerns and Dr. Rosas." Counsel was also able to point out inconsistencies in the testimony of the victims. In addition, counsel "put on a significant defense" and presented "substantial evidence that the allegations simply could not have happened" through several witnesses who "vouched for [defendant] and his time." Defendant also testified, thus the judge who was the trier of fact "heard from all the parties involved." And, as we stated in our opinion in defendant's appeal, in denying defendant's motion for a continuance in order to investigate a motion for new trial, the trial judge stated that she felt that trial counsel had prepared the case and had done a good job.

Conversely, the trier of fact would not have been required to accept the opinion of a defense expert, and would have been entitled to determine what weight, if any, to give such an opinion, and to weigh such opinion against conflicting expert testimony. (See Judicial Council of Cal. Crim. Jury Instns. (2006), CALCRIM No. 332.) In addition, the evidence against defendant at trial, apart from the expert testimony, was strong. Jane identified defendant as her molester and she was extensively cross-examined. Jane and Carlos testified that defendant committed similar sex offenses against them, in the same room of the same house, and they separately reported the abuse. And, Dr. Coleman testified at the hearing below that many victims of sexual abuse do not exhibit any physical evidence of it, and that he is aware that his opinion that there was nothing "depict[ing] signs of sexual penetration or trauma or molestation" is contrary to Jane's testimony.

After independently reviewing the record before us, we cannot conclude that defendant carried his burden below of demonstrating that counsel's failure to call an expert witness " 'fell below an objective standard of reasonableness.'" (*In re Marquez*, *supra*, 1 Cal.4th at p. 603.) Rather, we conclude it was not incompetent for defense counsel to favor a defense that "challenge[d] the prosecution's case with the numerous inconsistencies adroitly demonstrated by his cross-examination and by his presentation of his witnesses" over one of "call[ing] competing experts." While defendant, with the benefit of hindsight, makes a plausible argument that a defense expert may have been helpful, we will not second-guess trial counsel's reasonable tactical decision to not call his own expert witness. (*People v. Mitcham*, *supra*, 1 Cal.4th at p. 1059; *People v. Hill*, *supra*, 70 Cal.2d at p. 690.)

Even if we were to assume that defendant carried his burden of showing deficient performance, we would find that defendant failed to carry his burden of showing prejudice, the second prong of the *Strickland* test. The trial court concluded that defendant "was not prejudiced by his attorney's 'failure' to call competing experts with respect to Carlos but is prejudiced with respect to [Jane]." It found that the "physical examination of Carlos for sexual abuse that had ended 6 years before cannot have much value," whereas Jane's physical examination occurred shortly after defendant's last molestation of her. However, the testimony of defendant's experts was intended to challenge the testimony of both the expert who had examined Jane and the expert who had examined Carlos, and thus to "wash them [both] out."

Carlos and Jane, who were half-siblings, separately reported that defendant had molested them. The reported molestations involved similar acts under similar

circumstances, in the same room of the same house.  Therefore, Carlos's and Jane's testimony corroborated each other's, and was sufficient to support defendant's convictions, even without the expert testimony presented by the prosecution.  In addition, defendant's theory of defense as to both children was the same.  Accordingly, we conclude that defendant has not shown that there is a reasonable probability that, had counsel presented expert testimony to challenge the prosecution's experts, the result of the proceeding as to either Carlos or Jane would have been different.  (*Strickland*, *supra*, 466 U.S. at p. 694.)

Defendant's petition for writ of habeas corpus based on a claim that trial counsel provided ineffective assistance by failing to call an expert witness at trial must fail, and the trial court erred by granting the petition on that ground.  (*Strickland*, *supra*, 466 U.S. at pp. 688-691, 694; *People v. Mitcham*, *supra*, 1 Cal.4th at p. 1059; *People v. Hill*, *supra*, 70 Cal.2d at p. 690.)

DISPOSITION

The trial court's order granting the petition for a writ of habeas corpus and for a new trial on counts 36 and 37 is reversed.  The matter is remanded to the trial court with directions to enter an order denying the petition and reinstating the judgment of conviction.

Exh. N at 7-21 (footnotes renumbered).

**B.    Argument**

The state court of appeal reasonably applied *Strickland* in rejecting petitioner's claim.  As the court noted, petitioner, despite several opportunities, never presented admissible evidence indicating that trial counsel failed to consult with a medical expert. Exh. N at 8, 17-18.  Petitioner could have presented a declaration from trial counsel, or, more directly, simply subpoenaed him to testify at the evidentiary hearing.[10]  It was petitioner's burden to prove error, yet there was apparently no attempt to present evidence on the initial question of whether an expert was consulted. The result is, consistent with *Strickland v. Washington*, 466 U.S. at 689-90, a presumption, never rebutted, that counsel's decision not to call a medical expert to testify was a matter of trial tactics. Exh. N at 17-18.

It would have been reasonable to pursue such a tactic, despite the reasonableness of pursuing other tactics, e.g., presenting an expert. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998); *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998).  The decision whether to

---

10.    Trial counsel was apparently available, as petitioner's habeas counsel submitted a declaration reciting a conversation with trial counsel.  Exh. J at 43.

1   challenge the prosecution's case, including any experts, by way of cross-examination, versus

2   presenting competing experts, is a classic tactical decision. *See*, *e.g.*, *Turner v. Calderon*, 281 F.3d

3   851, 876 (9th Cir. 2002); *Dorsey v. Chapman*, 262 F.3d 1181, 1186 (11th Cir. 2001); *Phoenix v.*

4   *Matesanz*, 233 F.3d 77, 83 (1st Cir. 2001). "[W]hile the Constitution requires that a criminal

5   defendant receive effective assistance of counsel, the presentation of expert testimony is not

6   necessarily an essential ingredient of a reasonably competent defense." *Bonin v. Calderon*, 59 F.3d

7   815, 838 (9th Cir. 1995); *Miller v. Anderson*, 255 F.3d 455, 459 (7th Cir. 2001) ("A defendant's

8   lawyer does not have a duty in every case to consult experts even if the government is proposing to

9   put on expert witnesses."). Specifically, counsel can present an equally effective defense through

10  skillful cross-examination of the prosecution's experts. *Reinert v. Larkins*, 379 F.3d 76, 95 (3d Cir.

11  2004) ("counsel need not introduce expert testimony on his client's behalf if he is able effectively

12  to cross-examine prosecution witnesses and elicit helpful testimony"); *Smith v. Angelone*, 111 F.3d

13  1126, 1132-33 (4th Cir. 1997) (counsel not incompetent for failing to call expert witness where

14  counsel obtained the same information and pursued the same defense via cross-examination of

15  prosecution experts); *Ellefson v. Hopkins*, 5 F.3d 1149, 1150-1151 (8th Cir. 1993) (no ineffective

16  assistance where counsel's strategy was to call into question the weight of the state's serology

17  evidence through his cross-examination of the prosecution expert instead of calling defense expert);

18  *see Richter v. Hickman*, 521 F.3d 1222, 1230-32 (9th Cir. 2008) (no prejudice from failure to call

19  experts in firearms, serology, and pathology, individually or in the aggregate).

20          As the trial court itself acknowledged, trial counsel did a good job with the tactic he

21  elected. Exh. N at 19. Trial counsel pointed out inconsistencies in the testimony of each of the

22  victims, and vigorously challenged the prosecution's expert testimony. For example, in his cross-

23  exam of Dr. Kearns, trial counsel was able to suggest that the doctor was prone to find trauma and

24  was not as objective as the prosecution portrayed him. Trial counsel intimated that the injuries could

25  be self-inflicted and tried to pin the doctor down on his opinion of how much penetration and by

26  what type of object could cause the alleged injury. *See* RT 34-40. As for Dr. Rosas, trial counsel

27  elicited her admission that the scarring found on Carlos could have occurred as early as two years

28  before the exam, thus effectively neutralizing her testimony. *See* RT 318.

1       Contrary to the often-heard refrain that there is nothing to lose by presenting expert

2  testimony, there is much to lose.  Trial counsel in these circumstances runs the risk that his

3  competing experts will not be as persuasive as the prosecution's experts, thereby effectively

4  bolstering the prosecution's case.  This was particularly true here, because Dr. Coleman had never

5  even conducted a sexual assault examination on a child before.  Extensive time spent on competing

6  experts in the instant case also ran the risk of diverting attention from the critical evidence:  the

7  testimony of the victims.  In short, this is not the proverbial scenario where counsel has nothing to

8  lose and everything to gain by presenting competing experts.

9       The state court also reasonably applied *Strickland* in concluding that petitioner had not

10  met his burden of showing prejudice.  *See Woodford v. Visciotti*, 537 U.S. 19 (reversing Ninth

11  Circuit's grant of the writ because state court's prejudice determination was not unreasonable).  At

12  best, trial counsel could have neutralized the prosecutor's experts by presenting his own, competing

13  experts, and at worst could have bolstered the prosecution's experts.  Trial counsel still faced,

14  however, the testimony of the victims, which was very strong. The two victims independently

15  reported the offenses, and described similar acts and circumstances, in the same location.  Each

16  victim corroborated the other, the trial court expressly found them credible. Exhs. D at 11-12, N at

17  20.  There was no reasonable probability that, had trial counsel presented competing experts, the

18  outcome of the trial on the two counts (36 & 37) related to Jane would have been different.  For the

19  same reason, the state court's rejection of petitioner's claim was a reasonable application of

20  *Strickland*.

21                       **V.**

22  **PETITIONER WAS NOT DEPRIVED OF THE EFFECTIVE**

23  **ASSISTANCE OF TRIAL COUNSEL IN TRIAL COUNSEL'S FAILURE TO CONFRONT CARLOS WITH PRIOR INCONSISTENT**

24  **STATEMENTS**

25       Petitioner contends trial counsel was ineffective for failing "to impeach Carlos with his

26  own prior statement to investigators that contradicted his testimony about the number of molests."

27  Petition at 8.  Petitioner did not exhaust state remedies for this claim.  It may nevertheless be denied

28  on the merits.  The state court reasonably applied *Strickland* in rejecting the claim.

Memo. of Points and Auth. in Support of Answer - *Torrez v. Martel* - C 08-1309 TEH

1

**A.    Exhaustion**

2          Petitioner did not exhaust state remedies for his claim.  Petitioner did not raise this claim

3   on direct appeal.  On collateral review, he presented the claim in his petition for writ of habeas

4   corpus in the trial court, Exh. J at 6, but did not include the claim on appeal from the denial of his

5   habeas, Exhs. M-O.  In short, petitioner did not include the instant claim in either of his California

6   Supreme Court petitions for review.  Exhs. I, O.  The claim is therefore not exhausted.  While relief

7   is barred on the issue, 28 U.S.C. § 2254(b)(1), *Duncan v. Henry*, 513 U.S. at 365, this Court may

8   nonetheless deny it on the merits, § 2254(b)(2), for the reasons that follow.

9

**B.    State Court Ruling**

10         As indicated, while not exhausted, this claim was presented to the Santa Clara County

11  District Court.  That court denied the claim as follows:

12       Petitioner has failed to show that not introducing Carlos' statement to counselor Lawrence
         resulted in prejudice.  Carlos' statement to Lawrence was a one time statement in contrast
13       to Carlos' testimony and his interviews with other officers.  It was not reasonably
         probable therefore that had Carlos' statement to Lawrence been used to impeach Carlos
14       that it would have placed into issue the number of molests that occurred if it was found
         that Carlos had been molested.

15

16  Exh. J at 146-47.

17

**C.    Argument**

18         Carlos first revealed the molestations during a counseling session with Julian Lawrence,

19  a counselor at the juvenile home where Carlos resided.  Exhs. J at 54-57, K at 54, 60; *see* Exh. K at

20  79-81, 93.   In that first conversation, Carlos apparently told Lawrence, inter alia, that the

21  molestations happened "10-20 times."[11/]  Exh. J at 54, 59.  Petitioner asserts trial counsel should

22  have impeached Carlos with that prior statement, as Carlos testified at trial that the molestations

23  occurred almost every weekend starting when Carlos was six, and continuing until he was ten.

24  Petition at 8.

25         Trial counsel did not err by failing to cross-examine Carlos on the prior inconsistent

26  _____

27       11. The progression of the molestations, i.e., from fondling to intercourse, and the time span
    (four years) listed in Lawrence's report were consistent with Carlos's subsequent statements.  *See*
28  Exh. J at 54.

Memo. of Points and Auth. in Support of Answer - *Torrez v. Martel* - C 08-1309 TEH

statement.  Petitioner gives undue weight to initial statement.  Carlos made the statement to Julian Lawrence, a counselor at the juvenile home during a counseling session.  There is no suggestion the initial conversation was detailed, that the discussion was conducted for purposes of gathering facts for the purposes of litigation, or that Lawrence was a trained interviewer.  More importantly, Carlos subsequently consistently reported the number of molests.  On November 20, 1997, Sacramento County Sheriff's Deputy Borris interviewed Carlos.  Exh. K at 53.  Carlos told Deputy Borris that petitioner had molested him almost every weekend from age six until Carlos was ten years old.  Exh. K at 54-57.  After the Borris interview, Carlos was reinterviewed by Santa Clara Police Detective Phil Zaragoza.  Exh. K at 60.  Carlos told Detective Zaragoza that petitioner started molesting him (Carlos) when Carlos was six and continued almost every weekend until Carlos was ten.  Exh. K at 65-66.  Carlos testified consistently regarding the time span and number of molests at the grand jury hearing, Exh. K at 83-101, and again at trial.  *See also* Exh. J at 65 ((medical report, consistent).  Accordingly, even if trial counsel had attempted to impeach Carlos with his prior statement to the counselor, petitioner would have gained nothing.  The prosecution would have presented Carlos prior consistent statements to Deputy Borris and Detective Zaragoza, and Carlos's testimony at the grand jury hearing.  Any impeachment would have been nullified.  Trial counsel could have reasonably concluded that introducing the prior statement would prove futile.  For the same reasons, its omission did not prejudice petitioner.  The state court thus reasonably applied *Strickland* in rejecting petitioner's claim.  *See Brown v. Uttecht*, 530 F.3d 1031, 1036 (9th Cir. 2008) ("We give 'great deference' to 'counsel's decisions at trial, such as refraining from cross-examining a particular witness'"); *Mancuso v. Olivarez*, 292 F.3d 939, 955 (9th Cir. 2002) ("Mancuso's suggestions regarding how defense counsel might have handled [the witness's] crossexamination differently are insufficient to support an ineffective assistance of counsel claim").

## VI.

### PETITIONER WAS NOT DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN TRIAL COUNSEL'S FAILURE TO PRESENT IMPEACHMENT EVIDENCE

Petitioner contends trial counsel was ineffective for failing to impeach victim Carlos on various grounds.  Petition at 9-10.  Petitioner did not exhaust state remedies for this claim.  It may

1  nevertheless be denied on the merits.  The state court reasonably applied *Strickland* in rejecting the

2  claim.

3      **A.   Exhaustion**

4          Petitioner did not exhaust state remedies for his claim.  Petitioner raised this claim on

5  direct appeal, Exhs. G, Appellant's Opening Brief at 41, H at 18, but did not include it in his petition

6  for review of the decision rejecting the claim.  Exh. I.  Similarly, on collateral review, he presented

7  the claim in his petition for writ of habeas corpus in the trial court, Exh. J at 8, but did not include

8  the claim on appeal from the denial of his habeas, Exhs. M-O.  In short, petitioner did not include

9  the instant claim in either of his California Supreme Court petitions for review.  Exhs. I, O.  The

10  claim is therefore not exhausted.  While relief is barred on the issue, 28 U.S.C. § 2254(b)(1), *Duncan*

11  *v. Henry*, 513 U.S. at 365, this Court may nonetheless deny it on the merits, § 2254(b)(2), for the

12  reasons that follow.

13      **B.   The State Court Opinion**

14          Although he did not present his claim to the California Supreme Court, petitioner raised

15  his claim on direct review to the California Court of Appeal, which rejected it as follows:

16  Ineffective assistance of counsel

17          Defendant raises several claims of ineffective assistance of trial counsel based on
    counsel's cross-examination of Carlos.  He claims that counsel entered into stipulations
18  that were later used against him, and failed to pursue important impeachment of Carlos.
    He claims counsel's actions were not reasonable or tactically justified.  Lastly, he claims
19  that he has been prejudiced by counsel's actions.

20          To obtain reversal due to ineffective assistance of counsel, a defendant must establish
    that counsel's performance fell below an objective standard of reasonableness under
21  prevailing norms and then demonstrate a "reasonable probability" that but for counsel's
    professional errors, the result of the proceedings would have been different.  (*Strickland*
22  *v. Washington* (1984) 466 U.S. 668, 687-688, 691-692, 694, 80 L. Ed. 2d 674, 104 S. Ct.
    2052; *People v. Lucas* (1995) 12 Cal.4th 415, 436, 907 P.2d 373; *People v. Pope* (1979)
23  23 Cal.3d 412, 423-425, 152 Cal. Rptr. 732, 590 P.2d 859.)  When the claim of ineffective
    assistance of counsel is made on direct appeal, the claim will be sustained "only if the
24  record on appeal affirmatively discloses that counsel had no rational tactical purpose for
    his act or omission."  (*People v. Fosselman* (1983) 33 Cal.3d 572, 581, 189 Cal. Rptr. 855,
25  659 P.2d 1144; *People v. Zapien* (1993) 4 Cal.4th 929, 980, 846 P.2d 704.)  As the
    California Supreme Court has explained, "The failure to impeach a witness or to object
26  to evidence are matters which usually involve tactical decisions on counsel's part and
    seldom establish a counsel's incompetence. . . .  In the heat of a trial, defendant's counsel
27  is best able to determine proper tactics in the light of the [factfinder's] apparent reaction
    to the proceedings.  Except in rare cases an appellate court should not attempt to second-
28  guess trial counsel. . . . [Citation.]"  (*People v. Barnett* (1998) 17 Cal.4th 1044, 1140, 954

P.2d 384, internal quotation marks omitted.)  With these principles in mind, we will consider each of defendant's claims.

Prior to trial, defense counsel agreed to stipulate that neither Jane nor Carlos would be questioned regarding her allegation of his molest of her. Defendant argues that counsel negligently entered into these stipulations.  We find that defendant cannot show any prejudice from counsel's decision.  During the prosecution's case, the court heard testimony that Carlos had allegedly rubbed himself against Jane while they were both fully clothed.  The court later decided that the incident could be further explored through questioning of Jane, but not Carlos, and allowed defense counsel to recall Jane for that purpose.  Upon recall, Jane testified that Carlos did not do anything more than rubbing himself up against her.  Accordingly, defendant cannot show that he was prejudiced by counsel's stipulations.

During the testimony of Dr. Rosas, defense counsel was given some additional medical reports relating to her examination of Carlos.[12]  The reports disclosed that Carlos reported molesting other children starting at about 13 years of age, that he resided in a group home for juvenile "perpetrators," and that he admitted recently using the handle of a toilet plunder to penetrate his own anus.  The reports further state that Carlos's group home counselor reported Carlos had "been caught" masturbating in his room, in violation of house rules, and that the counselor suspected that Carlos was having sex with other male housemates.  Although the reports were considered by the court in determining whether Carlos should be recalled to testify, they were never offered as substantive evidence at trial.  Nor, with the exception of the information about the self-penetration with the toilet plunger, did counsel cross-examine Carlos about the information in the reports.  Defendant argues that all of this information was admissible and important, and that counsel's failure to pursue it was ineffective assistance.

The court heard testimony that Carlos's alleged molest of Jane simply involved his having rubbed himself against Jane while they were both fully clothed.  The court also heard testimony that Carlos was living in a group home for juvenile offenders, and that he was undergoing both group and individual counseling.  The court reviewed all the medical reports involving Carlos and allowed defense counsel to recall Carlos based on the information in the additional reports.  Thus, counsel had presented to the court, and the court was well aware of, Carlos's reported history.  As the record does not affirmatively disclose that counsel had no rational tactical purpose in not further pursuing the information in the additional reports during his recall of Carlos, we will not attempt to second-guess counsel's reasons for not doing so.  Defendant's alternative argument that court rulings barring such impeachment, "if such there be," were prejudicial error must fail as no specific court rulings are discussed.

During the testimony from Carlos's Martin Home counselor, the prosecutor asked the counselor, "And when confronted with something that he had done and in effect been caught at, did [Carlos] always lie?"  The counselor responded, "No.  What he would do is, I was working with him on talking about it's okay if you've done something.  You know.  We can work it out. And he started to buy into that way of thought and he started to be more - he would catch himself and say, you know what? I want to say no.  I say yes.  He would be more honest and truthful even though he knew what the consequences were."  Defendant argues that defense counsel's failure to object to this testimony as an inadmissible lay opinion as to Carlos's truthfulness constituted ineffective assistance.

Evidence relating to the credibility of a witness is always relevant.  "Except as

12.  Defense counsel had received one medical report prior to trial.

1  otherwise provided by statute, the court or jury may consider in determining the
   credibility of a witness any matter that has any tendency in reason to prove or disprove
2  the truthfulness of his testimony at the hearing, including but not limited to any of the
   following: . . . [¶] (e) His character for honesty or veracity or their opposites." (Evid.
3  Code, § 780.)  The counselor who testified here had been involved in Carlos's counseling
   for some six months prior to November 1997, when Carlos first reported the sexual abuse,
4  and for almost two years prior to defendant's trial.  Given the length and the nature of his
   relationship with Carlos, we believe that the counselor was qualified to render an opinion
5  on Carlos's character for honesty and veracity.  (See e.g., *People v. Smith* (1989) 214 Cal.
   App. 3d 904, 915, 263 Cal. Rptr. 155; *People v. Sergill* (1982) 138 Cal. App. 3d 34, 39,
6  187 Cal. Rptr. 497.)  Defense counsel cannot be faulted for failing to object to the
   counselor's testimony.  Defendant has not carried his burden of showing ineffective
7  assistance of counsel.

8  Exh. H at 18-21 (footnote renumbered).

9  **C.    Argument**

10    Petitioner asserts that his trial counsel "acted unreasonably and petitioner was prejudiced

11  by trial counsel's failure to competently impeach Carlos at trial."  Petition at 9.  To the contrary, trial

12  counsel thoroughly and sufficiently cross-examined Carlos.  *See* RT 216-40, 244-54, 259-66, 466-

13  68.  The state court thus reasonably applied *Strickland* in rejecting petitioner's claim.

14    **1.    Stipulations Regarding Jane**

15    On March 9, 1999, the trial court heard pretrial motions and stipulations.  The stipulations

16  specific to Jane involved an unrelated incident in which Jane was molested by a school janitor and

17  a single incident in which Carlos rubbed himself against Jane in a sexual nature.  RT 24-26.  The

18  trial court properly excluded the janitor incident and that ruling has never been challenged.

19  Petitioner focuses solely on the incident involving Carlos and Jane.  Petition at 9.

20    During discussions of the proposed stipulations, the prosecutor requested that both Carlos

21  and Jane not be questioned about the incident that occurred between them.  RT 25.  Defense counsel

22  stated that the incident would be addressed in order to attack Carlos's late reporting of the suffered

23  sexual abuse and to question Carlos about his counseling.  RT 25-26.  The prosecutor agreed that

24  the incident could be used on cross examination for such purposes.  RT 26.

25    On March 23, 1999, Jane took the stand.  RT 86.  During cross examination, defense

26  counsel questioned Jane about the circumstances surrounding Carlos's visitations and residential

27  counseling.  RT 112-14, 131.  Specifically, Jane testified she was not permitted to be with Carlos

28  after he left home for therapy.  RT 112.  On redirect, the prosecutor chose to clarify the situation by

Memo. of Points and Auth. in Support of Answer - *Torrez v. Martel* - C 08-1309 TEH

1   specifically asking Jane if Carlos had to leave the house because of an incident that involved her.

2   RT 131-32, 241.  Jane then testified that Carlos was placed in therapy for rubbing himself against

3   Jane while they were both clothed.  RT 132.

4        Carlos testified later the same day.  RT 201.  On cross examination, defense counsel asked

5   Carlos, "Now, is it true that your—that you acted improperly with your sister?"  The prosecution

6   objected  and the trial court overruled the objection.  RT 239.  The prosecutor requested a

7   conference and the trial court ordered the court room cleared and the discussions placed on the

8   record.  RT 239-40.  After defense counsel reported confusion over precisely what the pre-trial

9   stipulations entailed, the trial court decided that the incident could be explored through further

10  questioning of Jane, but not Carlos.  RT 243.

11       Defense counsel thereafter explored the incident by recalling Jane to testify on March 26,

12  1999.  RT 469.  Thus, on two separate occasions during trial, RT 132, 469, and once during a

13  conference with both attorneys, RT 239-43, the trier of fact learned the details of Carlos's rubbing

14  against Jane.  There can be no way to classify defense counsel's performance as inadequate.  Not

15  only was the information heard by the trier of fact, but counsel got the information admitted without

16  losing favor with the court for badgering Carlos or causing considerable delay.  Accordingly,

17  counsel did not error, and petitioner was not prejudiced.

18       **2.    Carlos's Background**

19       In addition to the incident with Jane, petitioner also claims counsel failed to impeach

20  Carlos with information about his own sexual conduct and juvenile record.  Petition at 9.

21  Specifically, petitioner asserts that Carlos should have been examined about his possible molestation

22  of other children, his own juvenile adjudications and his current probation status.  Petition at 9.

23       Trial counsel did not err, and did not prejudice petitioner.  As the state court pointed out,

24  the trial judge was already aware that Carlos had molested other children, and that Carlos resided

25  in a home for juvenile sex offenders.  Exh. H at 20.  For example, the trial court reviewed the reports

26  of Dr. Rosas and her staff.  RT 461.  Those reports contained information about Carlos's sexual

27  actions against other children, his residence in an inpatient treatment home for juvenile sex

28  offenders, and Carlos's admissions to anally penetrating himself.  Exh. H at 20.

1      Defense counsel had every tactical reason not to ask Carlos directly about the above

2 impeachment information.  Even if the court would have permitted defense counsel to openly attack

3 Carlos on the stand, *see* Cal. Evid. Code § 782, rehashing Carlos's post-offense behavioral problems

4 risked drawing attention to the probability that Carlos's behavior was the product of his long-term

5 abuse at the hands of petitioner.  Further, questioning Carlos on such matters would have been

6 cumulative.  As indicated, the court received all the information, albeit some through means other

7 than attacking Carlos on the stand.  Moreover, through the testimony of Dr. Rosas, Jane, and Julian

8 Lawrence, defense counsel was able to admit all the impeachment evidence without meeting the

9 requirements mandated by California Evidence Code section 782.[13]  *See also* Cal. Penal Code §

10 288(d) (in prosecution for sex offenses against a minor, "the court shall consider the needs of the

11 child victim and shall do whatever is necessary, within existing budgetary resources, and

12 constitutionally permissible to prevent psychological harm to the child victim . . . resulting from

13 participation in the court process").

14      Petitioner also cannot show prejudice here.  As discussed, the allegedly omitted

15 impeachment evidence was before the court, albeit not through Carlos himself.  The evidence

16 against petitioner was also overwhelming.  The cited post-offense conduct by Carlos was less likely

17 to impeach Carlos as to his reporting of the offenses, than demonstrate the harm petitioner had

18 caused by his protracted molestation of the boy.

19          I was the trial judge in this matter, as you know, and it was a Court trial and I
           believe the victims.  I looked at their credibility; I looked at the victims and I
20         believed them.  I thought that [original defense counsel] did a very good job.
           I thought the evidence was overwhelming.

21

22 Exh. D at 11.  "I think the case was presented properly and I found the defendant guilty, and based

23 on the evidence, I will still find him guilty."  Exh. D at 11-12.

24      In summary, the evidence petitioner claims was admitted was presented to the trial court

25 in one form or another.  Rational tactical bases for not otherwise confronting Carlos with such

26 _____

27      13.  Generally, California Evidence Code section 782 sets forth several procedural
requirements that must be met before a party may admit, in a sex offense trial, evidence of sexual
28 conduct of the complaining witness to attack the credibility of that witness.

1  information appears in the record.  There was thus no error or prejudice.  For the same reason, the

2  state court reasonably applied *Strickland* in rejecting this claim.

3

4  ## CONCLUSION

5  Accordingly, for the reasons stated, respondent respectfully requests that the petition for

6  writ of habeas corpus be denied with prejudice.

7  Dated:  September 8, 2008

8
                                        Respectfully submitted,
9
                                        EDMUND G. BROWN JR.
10                                      Attorney General of the State of California

                                        DANE R. GILLETTE
11                                      Chief Assistant Attorney General

12                                      GERALD A. ENGLER
                                        Senior Assistant Attorney General
13
                                        PEGGY S. RUFFRA
14                                      Supervising Deputy Attorney General

15

16                                      /s/ Gregory A. Ott
                                        GREGORY A. OTT
17                                      Deputy Attorney General

18                                      Attorneys for Respondent

19  20140321.wpd
    SF2008400894

20

21

22

23

24

25

26

27

28

Memo. of Points and Auth. in Support of Answer - *Torrez v. Martel* - C 08-1309 TEH

36