IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ADAM TORREZ,

               Petitioner,

v.

MICHAEL MARTEL, Warden,

               Respondent.

NO. C08-1309 TEH

ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS

       Petitioner Adam Torrez ("Petitioner") is currently incarcerated by the California Department of Corrections and Rehabilitation. He filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, before this Court on March 6, 2008, bringing six claims for relief. After conducting an initial review of the petition, the Court ordered Respondent Michael Martel ("Respondent"), Warden of Mule Creek State Prison, to show cause as to why the writ should not be granted. Respondent filed an answer on September 8, 2008, and Petitioner replied on October 20, 2009.

       In his answer, Respondent argued that Petitioner had failed to exhaust state remedies for his first, fifth, and sixth claims, and only partially exhausted his fourth claim. Petitioner, in response, filed a petition for writ of habeas corpus before the California Supreme Court in an effort to exhaust the unexhausted portion of claim four. He moved this Court to stay proceedings pending resolution of his petition by the California Supreme Court, and also

1  moved for leave to amend the petition to delete the remaining three unexhausted claims.
2  This Court, on February 24, 2010, denied the motion to stay, dismissed the unexhausted
3  portion of his fourth claim, and granted the motion to amend. Petitioner filed the amended
4  petition on March 1, 2010.

5  After carefully reviewing the parties' written arguments, the record, and the governing
6  law, the Court now DENIES the amended petition for the reasons set forth below.

## BACKGROUND

### I.   Procedural History

Petitioner was convicted of twenty counts of lewd or lascivious acts on a child, Cal. Pen. Code § 288(a), and two counts of continuous sexual abuse of a child, *id.* § 288.5, in a court trial in Santa Clara County Superior Court on June 4, 1999. The convictions were based on Petitioner's abuse of two minor children, Carlos and Jane, who were frequent guests at the home where Petitioner resided with his family.[1] One section 288(a) violation, and one section 288.5 violation, were for Petitioner's conduct with Jane; the remaining counts (nineteen under section 288(a), and one under section 288.5) were for violations against Carlos.[2]

Petitioner was sentenced on March 3, 2000, to a life term plus 66 years. The life term was imposed pursuant to section 667.61(b) of the California Penal Code, as punishment for the section 288(a) violation against Jane. He also received two consecutive twelve-year midterm sentences for the two section 288.5 convictions; one six-year midterm sentence for a

---

[1] This Court follows the California Court of Appeal in referring to individuals only by their first names, and by referring to the minor female victim by the pseudonym "Jane."

[2] Petitioner had been charged in a consolidated pleading with a total of thirty-two offenses against Carlos, and five against Jane. The prosecution dismissed twelve charges for section 288(a) violations against Carlos because Petitioner had been a juvenile at the time of the allegations; two section 288(a) counts and one section 288(b)(1) count regarding Jane were also dismissed. The pleading was orally amended to add a life sentence allegation under section 667.61(b).

2

section 288(a) violation against Carlos; and eighteen consecutive two-year terms for the remaining section 288(a) counts.

In the amended petition filed on March 1, 2010, Petitioner raises three claims for relief.  The first, for denial of the right to confrontation and to be personally present at trial, is based on the telephonic reexamination of Carlos in Petitioner's absence.  In his second claim, Petitioner argues that the imposition of a life term under section 667.61(b) – for specified sex offenses against more than one victim – constitutes an ex post facto punishment as the statute was enacted only after Petitioner's offenses against Carlos.  The third claim, for ineffective assistance of counsel, is based on the failure of Petitioner's trial counsel to investigate or introduce expert medical evidence to rebut the prosecution's expert testimony regarding physical evidence of Jane's abuse.

Petitioner exhausted state remedies for the first two claims in a direct appeal to the California Court of Appeal, which affirmed the judgment on July 18, 2003; the California Supreme Court summarily denied his petition for review on October 15, 2003.  Petitioner exhausted the third claim in a petition for writ of habeas corpus in Santa Clara County Superior Court on November 12, 2004.  The superior court granted in part the writ following an evidentiary hearing and ordered a new trial as to the two counts regarding Jane.[3]  The prosecution appealed to the California Court of Appeal, which reversed and remanded with instructions to deny the petition and reinstate the judgment of conviction.  The California Supreme Court denied review on January 3, 2008.

---

[3] Petitioner had also brought a claim for ineffective assistance of counsel with respect to the twenty counts regarding Carlos.  However, the superior court denied the petition as to those counts, a determination that Petitioner did not appeal; as Petitioner failed to exhaust that claim, it is not currently before this Court.  *See* Order Denying Mot. to Stay and Granting Mot. to Amend (Doc. 43).

3

**II.     Factual Background**

Carlos and Jane are half-siblings; Carlos was born in 1981, and Jane in 1988.[4] Petitioner is the younger brother of Jane's father, Larry. Rachel, the mother of Carlos and Jane, was in a relationship with Larry from 1985 or 1986 until March of 1997. Starting in approximately 1987, Rachel would regularly visit Larry's parents' home – where Petitioner lived – with Carlos and, after her birth, Jane. At trial, the prosecution presented testimony from Carlos, Jane, Rachel, an investigating police officer, and two medical experts.

Carlos testified that he and his mother began visiting Petitioner's house on weekends when he was about five years old. He would spend time with Petitioner in his bedroom, which had toys, games, and a Nintendo. Petitioner fondled Carlos's penis for the first time when he was six years old. The abuse progressed from there: Petitioner had Carlos fondle his penis, Petitioner orally copulated Carlos, and Petitioner had Carlos orally copulate him by pushing Carlos's head towards his penis. Petitioner began to sodomize Carlos when he was seven or eight years old. By the age of nine, Carlos told his mother he did not want to go to Petitioner's house, and his visits became less frequent. The abuse ceased when Carlos was ten.

Jane – who is seven years younger than Carlos – also recalled spending time alone with Petitioner in his bedroom. Petitioner first touched her on the vagina, but Jane could not recall whether it was above or below her clothes; the second time, he touched her below her clothes. He later put his tongue on her vagina. She testified that Petitioner touched her more than twenty times, while she was in second and third grade, although she did not remember when it first began or how old she was. Petitioner asked Jane to touch his penis, which she did because she was scared. He attempted to insert his penis in her vagina, but she cried and

---

[4] On habeas, this Court reviews the "last reasoned decision" by the state courts. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). The correctness of the state court's factual findings is presumed, unless Petitioner can rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner does not dispute the accuracy of the factual findings made by the California Court of Appeal on direct appeal; the Court therefore draws the facts from that ruling. *See* Resp. Ex. H (*People v. Torrez*, H021287 (Cal. Ct. App. July 18, 2003)).

4

told him it hurt; when he tried to put his penis in her rectum, she told him not to and ran out of the room. The touching stopped once Jane told her mother, Rachel, about it.

Rachel testified that Petitioner and Carlos were alone together in Petitioner's bedroom on a number of occasions when she and Carlos visited the house. The bedroom door was usually halfway open when she would check on them. Once he was older, Carlos no longer wanted to visit the house with Rachel and Jane, who continued to visit without him. By the time Jane was in second or third grade, the visits happened only once or twice a month. Although Rachel never found Jane in Petitioner's room with the door closed, they had opportunities to be alone together. Rachel stopped the visits in March 1997, when Jane told her about the abuse. At the same time, Jane also told her mother that her brother Carlos once had rubbed himself against her while they were both wearing clothes.

Carlos entered a residential facility for juvenile offenders in May or June of 1997, where he received counseling.[5] He disclosed his abuse by Petitioner to a counselor, who made a report to the authorities within 24 hours, on November 13, 1997. On the counselor's advice, he called his mother to tell her about the abuse.

Santa Clara police officer Filemon Zaragoza interviewed Jane on April 1, 1997, and spoke to Carlos by telephone on November 22, 1997, after each had disclosed the abuse to their mother. Jane described a number of sexual acts involving Petitioner, including fondling, oral copulation, digital penetration of her vagina, and attempted penile penetration of her vagina. The acts occurred in Petitioner's bedroom, as Jane played with Nintendo and other games. Carlos told Officer Zaragoza that he was five or six years old when Petitioner began abusing him, and that the abuse stopped by the time he was ten. He said that Petitioner fondled him, made him fondle and orally copulate Petitioner, and sodomized him.

The prosecution presented two medical experts. Dr. David Kerns, the chairman of the pediatrics department at Valley Medical Center, said that photographs and a report from a March 18, 1997 physical examination of Jane showed a markedly narrow hymeneal rim, the

---

[5] In addition to the incident with Jane, Carlos had also admitted to molesting other children.

5

1  "most frequent and consistent finding that is seen in cases of repeated penetrating trauma."
2  Resp. Ex. C, 32:5-7 (Rep. Tr.).  Such a finding is consistent with attempted or actual penile
3  penetration, or with repeated penetration by a finger or fingers.  Dr. Angela Rosas, a
4  pediatrician at the U.C. Davis Medical Center, testified based on her December 8, 1997
5  physical examination of Carlos. She identified unusual dark spots on one side around his
6  anus, which she concluded were pigment discoloration from scarring caused by penetration
7  injury; the age of the scarring was consistent with the time period of the abuse Carlos had
8  described to her.  Carlos also suffered from encopresis, a condition that causes children to
9  lose control of their bowel movements; that condition, which is seen in children who have
10 and have not been abused, could not be the source of the scarring, she said.

11      The defense case focused on relatives and friends who were present during some of
12 Jane and Carlos's visits.  Numerous witnesses – Petitioner's mother and father, Sally and
13 Johnnie, his nephew Manuel, and Manuel's friend David – testified that the door to
14 Petitioner's room was open at all times.  Sally said Carlos was too young to have much
15 contact with Petitioner during the first visits; he only started playing Nintendo in Petitioner's
16 room once he was older.  Jane spent most of her visits with her father or grandfather,
17 according to Sally, while Rachel typically sat in Sally's bedroom, down the hall from
18 Petitioner's room.  Johnnie testified that Jane was always with him during visits, except once
19 when she watched cartoons with Petitioner as Johnnie went to the store.  Manuel testified
20 that he shared a room with Petitioner for many years, and that nothing inappropriate ever
21 happened in that time.  Carlos was never alone in the bedroom with either Manuel or
22 Petitioner, and if he ever came by the room, he was ushered out within a few minutes.
23 Manuel's friend David testified that he visited Manuel almost daily, and that he and Manuel
24 would play video games in the room he shared with Petitioner, who was usually present.  He
25 never saw Petitioner or Manuel play with Carlos or Jane.  Brandon and Marcus, two other
26 friends of Manuel, recalled having met Jane a few times, but testified that she never played
27 with them upstairs in the bedroom.
28

6

Petitioner, testifying in his defense, said that he was in high school when he met Carlos, and would spend at most 15 minutes with Carlos during his visits. Petitioner only let Carlos into his room once during the first year, to sleep overnight, but Carlos was never alone in his room again. Petitioner only let Carlos play with the Nintendo and other toys in his room once Carlos was nine or ten years old, he said. Petitioner testified that, after Jane was born, he was usually at a friend's house during the visits. He said he had only been alone with Jane once, for about 15 minutes when her grandfather went to the store. He started avoiding Jane after she told her mother, at age four, that Petitioner had touched her inappropriately.

Carlos, recalled by trial counsel to testify via telephone, said that he penetrated his rectum with the handle of a toilet plunger about five times between June and August 1997. Jane was also recalled and testified that Carlos had once touched her inappropriately by rubbing up against her. She said that, before turning eight, she once told her mother that Petitioner had touched her private parts; although Petitioner continued to touch her after that, she waited before telling her mother again.

**STANDARD OF REVIEW**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly established Supreme Court law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving materially indistinguishable facts but reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision is an "unreasonable

7

application" of Supreme Court law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

Holdings of the Supreme Court at the time of the state court decision are the only definitive source of clearly established federal law under AEDPA. *Williams*, 529 U.S. at 412. "While circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003) (citation omitted).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citation omitted). Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C § 2254(e)(1).

When applying these standards, the federal court should review the "last reasoned decision" by the state courts. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). This Court therefore reviews the two decisions by the California Court of Appeal, which denied Petitioner's first and second claims on direct review, and denied his third claim on collateral review.

**DISCUSSION**

**I.  Confrontation Clause**

The Sixth Amendment, which applies to the states by way of the Fourteenth Amendment, guarantees a criminal defendant the right "to be confronted with the witnesses against him." The confrontation clause protects the defendant's "right physically to face those who testify against him." *Coy v. Iowa*, 487 U.S. 1012, 1017 (1988) (quoting

8

*Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987) (plurality opinion)).  Petitioner claims that his right to confrontation was violated when Carlos testified by telephone regarding information in a medical report when Petitioner was not in court.  The telephonic appearance denied the trial court the ability to assess his demeanor, Petitioner argues, and denied Petitioner the right to be present.

      Carlos's telephonic testimony occurred at the end of trial, at the request of trial counsel.  Carlos had already testified in person, in the presence of Petitioner, and had been subject to cross-examination.  However, only after his testimony concluded did trial counsel receive medical reports noting that Carlos had penetrated himself with the handle of a plunger, which could have been the cause of the trauma to his anus.  On March 26, 1999, before resting his case, trial counsel sought to reexamine Carlos as to that issue.  Carlos, who resided at a facility in Sacramento, was reached by telephone; counsel assembled in chambers and conducted the examination by phone at 11:00 that morning.  Petitioner was not present, and trial counsel explicitly waived Petitioner's presence before the examination began.  In a brief redirect, the prosecution informed Carlos that he would be asked about his statement in his medical reports that he had engaged in self-penetration, most recently in August of 1997.  Carlos recalled telling that to the doctors but did not remember how many times he had penetrated himself; he said that he first did so in June or July of 1997, in a restroom.  On trial counsel's re-cross, Carlos estimated having penetrated himself about five times in the June to August 1997 time frame.  The testimony spans only two pages of the reporter's transcript.

      Following Carlos's telephonic appearance, the trial court confirmed with trial counsel that he waived Petitioner's presence because Petitioner had left the court.  Trial counsel stated that he had erroneously told Petitioner to return at 2:00 in the afternoon, having forgotten about the proposed call to Carlos.  Trial counsel stated that he would advise Petitioner of the testimony, and suggested that "[m]aybe we can make a brief transcript of the conversation, and my client can have a copy of it prior to the next court date."  Resp. Ex. C, 468:25-27 (Rep. Tr.).

9

The "literal right to 'confront' the witness at the time of trial . . . forms the core of the values furthered by the Confrontation Clause." *California v. Green*, 399 U.S. 149, 157 (1970). "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970).[6] "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). To that end, the clause ensures that the trier of fact can "observe the demeanor of the witness in making his statement, thus aiding the [trier of fact] in assessing his credibility." *Green*, 399 U.S. at 158. It also "insures that the witness will give his statements under oath" and "forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth.'" *Id.*

The right to confrontation is not absolute, however. Although "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact," the Supreme Court has "never held" that it "guarantees criminal defendants the absolute right to a face-to-face meeting with witnesses against them at trial." *Craig*, 497 U.S. at 844. "[C]ompeting interests . . . may warrant dispensing with confrontation at trial" in "certain narrow circumstances." *Id.* at 848. The Supreme Court held in *Craig* that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850. The Supreme Court applied that rule to conclude that the confrontation clause does not "categorically prohibit[] a child witness in a child abuse case from testifying

---

[6] The right to presence is also "protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v. Gagnon*, 470 U.S. 522, 526 (1985). In arguing that his right to presence was violated, Petitioner relies in part on cases that address the right as protected by the Due Process Clause. *See, e.g.*, *Kentucky v. Stincer*, 482 U.S. 730, 744-45 (1987) (addressing exclusion from pre-testimony hearing on competency of child witness to testify). Since Petitioner alleges a denial of the right to confront a witness against him at trial, the claim is appropriately examined under the Sixth Amendment rather than the Due Process Clause.

10

against a defendant at trial, outside the defendant's physical presence, by one-way closed circuit television." *Id.* at 840.

Petitioner argues that the taking of telephonic testimony in his absence violated his right to confrontation – a right that trial counsel could not waive on his behalf. A habeas petitioner is only "entitled to habeas relief based on trial error" if he "can establish that it resulted in 'actual prejudice,'" meaning the error "had substantial and injurious effect or influence in determining" the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Plascencia v. Alameida*, 467 F.3d 1190, 1202 (9th Cir. 2006) (applying *Brecht* standard to allegation of confrontation clause violation). Petitioner contends that he was prejudiced by the denial of the right to confrontation, because Carlos may have been untruthful as to the timing and the fact of his self-penetration. Dr. Rosas testified that she had found evidence of trauma to Petitioner's anus, which could have occurred "as early as two years before the examination." Resp. Ex. C, 318:8-10 (Rep. Tr.). According to Carlos's telephonic testimony, he penetrated himself approximately six months before the medical examination that found evidence of anal trauma. Had the self-penetration occurred earlier, Petitioner argues, the trauma finding could more likely be explained by Carlos's acts, rather than abuse by Petitioner. Petitioner also contends that Carlos may have made up the plunger story to mask his sexual activity with other individuals, which could have violated his terms of probation or the rules of the juvenile offender group home where he resided.

The California Court of Appeal ruled on this claim as follows on direct review:

> Defendant and the court were both present during Carlos's original testimony and cross-examination, and during the examination and cross-examination of Dr. Rosas. Defense counsel received Dr. Rosas's additional medical reports at the time she testified, so he could not cross-examine Carlos at the time he originally testified about the information in the additional medical reports regarding Carlos's self-infliction of a toilet plunger in his rectum. Instead, after defendant testified in his own behalf, defense counsel persuaded the trial court to permit him to recall Carlos regarding that information. Given Carlos's location, he would not be available to testify that day except by telephone call. The telephone call . . . was then made and, instead of waiving the opportunity to question Carlos, defense counsel expressly waived defendant's right to be present and impliedly waived defendant's right to have Carlos testify in

11

> person in order to get the information on the record. Moreover, defendant apparently received a transcript of the testimony. Although Carlos's testimony was directly relevant to the charges against defendant, defendant's absence at the brief proceeding did not bear a reasonable relation to the fullness of his opportunity to defend against the charges. (See, *People v. Carpenter*, *supra*, 15 Cal. 4th at p. 378.) Defense counsel's partial waiver of defendant's confrontation rights was binding on defendant. (See also, *People v. Rios* (1992) 9 Cal. App. 4th 692, 702 [defense counsel's acceptance of the terms of an in chambers meeting constituted a binding partial waiver of the defendant's right to confrontation].) No prejudicial error has been shown.

Resp. Ex. H, at 16-17 (*People v. Torrez*, H021287 (Cal. Ct. App. July 18, 2003)). The state court concluded there was no confrontation clause violation because trial counsel's waiver was binding on Petitioner, and that there was no prejudice. This Court can overrule that conclusion only if it is "contrary to, or involve[s] an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d).

The Supreme Court observed, in 1990, that a criminal defendant's "right to a face-to-face meeting with witnesses against them at trial" is not "absolute." *Craig*, 497 U.S. at 844. In *Craig*, the Court concluded that the confrontation clause can be satisfied without a face-to-face confrontation only where there is a "case-specific" finding that "denial of such confrontation is necessary to further an important public policy" and "the reliability of the testimony is otherwise assured." *Id.* at 850, 855. The Supreme Court has not addressed whether trial counsel can waive the right to confrontation without the consent of the defendant.

The California Court of Appeal concluded that there was no prejudicial error, a ruling that is not contrary to, or an unreasonable application of, Supreme Court precedent.[7] Carlos had already testified in person and was subject to cross-examination regarding Petitioner's offenses before he was recalled via telephone. The reexamination occurred at the request of Petitioner's trial counsel – not the prosecution – in order to elicit Carlos's own testimony

---

[7] The state court did not need to demonstrate an awareness of applicable Supreme Court precedent, so long as its reasoning and result did not contradict them. *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

12

1 regarding his reported statement to medical personnel. The testimony was brief and confined
2 to the issue of Carlos's self-penetration; Carlos did not discuss or even allude to any
3 allegations against Petitioner at that time. Carlos was under oath and subject to cross-
4 examination, both of which are factors ensuring the reliability of his testimony. However,
5 since the examination was by telephone, the trial court could not observe his demeanor, and
6 Petitioner was not present. Those infirmities are insufficient to conclude that the
7 confrontation clause violation – if there was one – caused actual prejudice. The purpose of
8 Carlos's reexamination was to explore an alternative explanation for the trauma Dr. Rosas
9 had observed to Carlos's anus. Carlos's earlier in-person testimony – not his brief telephonic
10 testimony – formed the basis for Petitioner's conviction. Allowing Carlos to testify by
11 telephone in Petitioner's absence did not have "substantial and injurious effect or influence"
12 on the verdict. Habeas relief as to Petitioner's first claim is therefore DENIED.

## II. Ex Post Facto Punishment

Petitioner argues, in his second claim for relief, that he was subjected to an unconstitutional ex post facto punishment by the imposition of a life sentence pursuant to section 667.61(b) of the California Penal Code. Although Petitioner was sentenced to life for his section 288(a) violation against Jane, the life term was triggered in part by his offenses against Carlos – which predated the passage and enactment of section 667.61(b). Petitioner therefore contends that his life term violates the constitutional prohibition of ex post facto laws.

Section 667.61(b) provided that "a person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 15 years." Cal. Stats. 1993-94, 1st Ex. Sess., c.14 (S.B. 26), § 1, p. 8570.[8] Petitioner's section 288(a) violation against Jane was among the offenses specified in subdivision (c).

---

[8] Section 667.61 has since been amended. This court cites the version under which Petitioner was sentenced.

13

1  As Petitioner was also convicted for offenses against Carlos, he met "one of the
2  circumstances specified in subdivision (e)": conviction "in the present case or cases of
3  committing an offense specified in subdivision (c) against more than one victim." *Id.* At
4  Petitioner's March 3, 2000 sentencing, the trial court imposed a life term under section
5  667.61(b) for the section 288(a) conviction as to Jane.

"The ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quoting *Cummings v. Missouri*, 4 Wall. 277, 325-326 (1867)). "[T]wo critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29. Section 667.61 was enacted in 1994 and went into effect in 1995. The Carlos offenses occurred in 1990 and 1991; the Jane offenses occurred in 1997. Petitioner argues that the life term violated the constitutional prohibition against ex post facto punishments, because it increased the punishment for the Carlos offenses after they had occurred. At the time of those offenses, only the determinate terms provided in section 288 – of three, six, or eight years – were available.

The California Court of Appeal ruled on this claim as follows on direct review:

> We agree with respondent that the matter that precipitates the life term is the commission of a qualifying offense after the effective date of the statute. The sentencing scheme in section 667.61 is analogous to recidivist enhancements that increase punishment for a crime committed after the effective date of the statutory change because of a conviction for a crime prior to that date. (See, e.g., *People v. Snook* (1997) 16 Cal. 4th 1210 [enhanced penalty for repeat driving under the influence offenders]; *People v. Williams* (1983) 140 Cal. App .3d 445 [enhancement under section 667.6, subd. (b), for prior convictions predating the enactment of the statute].) "In the context of habitual criminal statutes, 'increased penalties for subsequent offenses are attributable to the defendant's status as a repeat offender and arise as an incident of the subsequent offense rather than constituting a penalty for the prior offense.' [Citation.]" (*People v. Jackson* (1985) 37 Cal. 3d 826, 833.)
>     Here, defendant was convicted of a qualifying offense, count 36, after the effective date of section 667.61. The court imposed a life term for that count under section 667.61 because

14

> defendant was a repeat offender. The sentence arises as an incident of the later offense rather than constituting a penalty for the earlier offense. No ex post facto violation has occurred.

Resp. Ex. H, at 18 (*People v. Torrez*, H021287 (Cal. Ct. App. July 18, 2003)). The purpose of the ex post facto clause was "to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver*, 450 U.S. at 28-29. The California Court of Appeal concluded that no ex post facto violation occurred here, because the life sentence was imposed for Petitioner's section 288(a) offense against Jane, which occurred after section 667.61 went into effect. Petitioner there had "fair warning," as required by the Supreme Court: the passage of section 667.61 apprised Petitioner that abusing another minor could subject him to a life sentence.

Petitioner did not face a life term for any of the Carlos charges. Rather, he was only subject to that sentence for an offense committed against Jane after the statute went into effect. *See Nichols v. United States*, 511 U.S. 738, 747 (1994) ("[R]ecidivist statutes . . . do not change the penalty imposed for the earlier conviction."). As that ruling is not contrary to clearly established federal law, habeas relief as to the ex post facto claim is DENIED.

### III.   Ineffective Assistance of Counsel

The prosecution's medical expert, Dr. Kerns, had testified that the physical examination of Jane revealed a narrow hymeneal rim, which he characterized as the most frequent and consistent finding in cases of repeated penetrative trauma. Although trial counsel subjected Dr. Kerns to cross-examination, no rebuttal experts were presented to refute his conclusions. Petitioner brings a claim for ineffective assistance of counsel based on trial counsel's alleged failure to investigate and challenge that testimony.

A criminal defendant is guaranteed effective assistance of counsel by the Sixth Amendment. That right is denied when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A petitioner raising an

15

ineffective assistance claim must show the deficiency of counsel's performance and prejudice to the defense. Performance is deficient where it falls "below an objective standard of reasonableness," with reasonableness assessed according to "prevailing professional norms." *Id.* at 688. Counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," while "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. Prejudice occurs where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A reviewing court may "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice" without determining "whether counsel's performance was deficient." *Id.* at 697.

Petitioner brings a claim for ineffective assistance of counsel, alleging that trial counsel failed to consult any medical experts to challenge the prosecution's expert medical testimony, and that his deficient performance resulted in prejudice. In assessing this claim on state habeas, the state superior court held an evidentiary hearing to determine "whether petitioner's attorney failed to provide an expert to challenge the medical testimony offered at the trial resulting in prejudice to the petitioner." Resp. Ex. J., at 141 (Cl. Tr.). The evidentiary hearing addressed only the prejudice prong of *Strickland*, as the court "made the assumption that the first prong of *Strickland* had been shown by virtue of the petitions based on what was presented at the time." Resp. Ex. L., 17:19-23 (Rep. Tr.). In light of this ruling, no evidence was taken regarding the deficient performance prong of *Strickland*, even though Petitioner's trial counsel had been subpoenaed to testify at the hearing.

Petitioner presented two expert witnesses at the evidentiary hearing: Dr. Lee Coleman, a child psychiatrist, and Dr. James Crawford, a pediatrician and medical director of the Center for Child Protection at Children's Hospital in Oakland. In a declaration submitted with the petition, Dr. Coleman opined that the examination of Jane – as described in her

16

medical report and the trial testimony of Dr. Kerns – "was completely normal." Resp. Ex. J, at 52. At hearing, Dr. Coleman testified that Dr. Kerns' conclusion that the narrow hymeneal rim was indicative of sexual trauma contradicted "established knowledge in the field" and "completely violates basic medical understanding of the human body." Resp. Ex. L, at 52:4-7, 53:1-3. He identified nothing in the photographs "that depict[s] signs of sexual penetration or trauma or molestation as those signs have been described in the current professional literature." *Id.* at 66:16-21. Dr. Crawford similarly testified that Jane's narrow hymen was not necessarily evidence of prior trauma. Based on that evidence, the trial court concluded that Petitioner was prejudiced by trial counsel's failure to call medical experts with respect to Jane, and granted the petition for habeas relief as to those two counts.

The state appealed, and the California Court of Appeal reversed the grant of habeas. As to the first *Strickland* prong, it ruled that "the record before the trial court was insufficient as a matter of law to support its finding of deficient performance." Resp. Ex. N, at 17. Given the absence of "competent evidence in the record that would support a finding that trial counsel failed to consult a medical expert," the court had to "presume that counsel's decision to not call an expert to testify at trial was a matter of trial tactics and strategy." *Id.* at 17-18. The court went on to assess whether that decision fell below an objective standard of reasonableness, and whether Petitioner was prejudiced by that failure:

> After independently reviewing the record before us, we cannot conclude that defendant carried his burden below of demonstrating that counsel's failure to call an expert witness "'fell below an objective standard of reasonableness.'" *(In re Marquez, supra,* 1 Cal.4th at p. 603.) Rather, we conclude it was not incompetent for defense counsel to favor a defense that "challenge[d] the prosecution's case with the numerous inconsistencies adroitly demonstrated by his cross-examination and by his presentation of his witnesses" over one of "call[ing] competing experts." While defendant, with the benefit of hindsight, makes a plausible argument that a defense expert may have been helpful, we will not second-guess trial counsel's reasonable tactical decision to not call his own expert witness. *(People v. Mitcham, supra,* 1 Cal.4th at p. 1059; *People v. Hill, supra,* 70 Cal.2d at p. 690.)
> 
> Even if we were to assume that defendant carried his burden of showing deficient performance, we would find that defendant failed to carry his burden of showing prejudice, the second prong of the *Strickland* test. The trial court concluded that

17

> defendant "was not prejudiced by his attorney's 'failure' to call competing experts with respect to Carlos but is prejudiced with respect to [Jane.]" It found that the "physical examination of Carlos for sexual abuse that had ended 6 years before cannot have much value," whereas Jane's physical examination occurred shortly after defendant's last molestation of her. However, the testimony of defendant's experts was intended to challenge the testimony of both the expert who had examined Jane and the expert who had examined Carlos, and thus to "wash them [both] out."
> 
> Carlos and Jane, who were half-siblings, separately reported that defendant had molested them. The reported molestations involved similar acts under similar circumstances, in the same room of the same house. Therefore, Carlos's and Jane's testimony corroborated each other's, and was sufficient to support defendant's convictions, even without the expert testimony presented by the prosecution. In addition, defendant's theory of defense as to both children was the same. Accordingly, we conclude that defendant has not shown that there is a reasonable probability that, had counsel presented expert testimony to challenge the prosecution's experts, the result of the proceeding as to either Carlos or Jane would have been different. (*Strickland*, *supra*, 466 U.S. at p. 694.)
> 
> Defendant's petition for writ of habeas corpus based on a claim that trial counsel provided ineffective assistance by failing to call an expert witness at trial must fail, and the trial court erred by granting the petition on that ground. (*Strickland*, *supra*, 466 U.S. at pp. 688-691, 694; *People v. Mitcham*, *supra*, 1 Cal.4th at p. 1059; *People v. Hill*, *supra*, 70 Cal.2d at p. 690.)

Resp. Ex. N, at 19-20 (*In re Torrez*, H030780 (Cal. Ct. App. Oct. 1, 2007)).

Petitioner argues that the Court of Appeal's conclusion that trial counsel made an informed decision not to call an expert was an "unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), because Petitioner was denied the opportunity to present evidence as to that issue: although trial counsel had been subpoenaed to testify as to the deficient performance issue, the trial court's ruling limited the evidentiary hearing to prejudice. "If . . . a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an 'unreasonable determination' of the facts." *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004). Petitioner therefore contends that it was unreasonable, in light of the trial court's refusal to hear evidence on this issue, for the Court of Appeal to "presume that counsel's decision to not call an expert to testify at trial was a matter of trial tactics and strategy." Resp. Ex. N, at 17-18.

18

However, the Court of Appeal's decision did not rest on the first prong of *Strickland*. Rather, the court went on to find that, "[e]ven if we were to assume that defendant carried his burden of showing deficient performance, we would find that defendant failed to carry his burden of showing prejudice." Resp. Ex. N, at 19-20. If that finding is not an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts, habeas relief is unavailable. Under *Strickland*, prejudice occurs "where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The Court of Appeal did not unreasonably apply that standard. Had defense experts been presented to rebut Dr. Kerns, their testimony could, at best, have negated the prosecution's expert. However, Jane's testimony – corroborated by Carlos's similar account of abuse he separately endured from Petitioner – was sufficient to support the convictions even without the testimony of Dr. Kerns. Habeas relief as to Petitioner's claim for ineffective assistance of counsel is therefore DENIED.

## CONCLUSION

For the reasons set forth above, Petitioner has failed to show that he is entitled to habeas relief in this case. Accordingly, with good cause appearing, the amended petition for a writ of habeas corpus is DENIED. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated:  8/13/10

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT